THE EMPLOYERS' LIABILITY ASSURANCE COMPANY (LIMITED) v. THE COMMISSIONER OF INSURANCE.

*Foreign insurance companies—Authority to transact business in Michigan—Statutes—Practical construction.*

1. Act No. 237, Laws of 1881, requiring a deposit of $100,000 with the State Treasurer of this State, or with the chief financial officer or commissioner of insurance of the state where the insurance company desiring to engage in business in this State is organized, does not authorize a foreign insurance company to engage in such business by depositing the required security with the proper officer in another state, where such company is licensed to do business.

2. The fact that a contrary construction has been placed upon the statute by former Commissioners of Insurance will not compel a successor to follow such precedent, the law not having been in force long enough to make it evident that such construction has been brought home to the attention of the various departments of the government, and approved by their acquiescence.

3. The use of the word "states," in the statute, is manifestly confined to our own communities within the United States. In one sense, nations are often and properly designated as states; but

where companies formed under the laws of foreign governments are mentioned as distinct from companies of other states, the repetition and distinction cannot be considered meaningless.

Mandamus to compel respondent to license a foreign insurance company to do business in Michigan.   Argued January 18, 1887.   Denied January 27, 1887.   The facts are stated in the opinion.

*Isaac Marston,* for relator.

CAMPBELL, C. J.   Relator, a British company, applied to the Insurance Commissioner for a license to transact business in this State, which he refused to allow without a deposit of securities to the amount of $100,000, which is required by statute where no similar deposit has been made at such other place as is contemplated by law.   Relator showed proper evidence that such a deposit had been made in the state of New York upon the conditions required by our legislation.

The only question is whether, under the statute which governs this case, and which was fully discussed on the argument, a deposit in New York is a sufficient compliance.

The statute (Act No. 237, Laws of 1881, p. 279) requires a deposit of at least $100,000 with the State Treasurer of this State, or with the chief financial officer or commissioner of insurance of the state where such company or association is organized, duly assigned to such officer in trust for the benefit of all policy-holders.   Said deposit shall consist of bonds or stocks of the United States, or of the state where such company or association is organized, or of bonds and mortgages on improved unincumbered real estate worth double the sum loaned thereon.

It is not disputed that the statute designs to allow licenses to companies formed under the laws of foreign governments, as well as to those created in other states of the Union. They are all covered expressly by more than one section of the statute.   But the right to rely on a deposit of securities

elsewhere is in terms confined to deposits in the state in which a company is "organized."

It is not claimed that this relator was organized in New York; but it is insisted that obtaining authority to do business there satisfies sufficiently the essentials of organization. It is further claimed that the insurance department has practically construed this statute by licensing companies on that theory, and that the present commissioner had done the same thing until his attention was directed to the question in such a way as to lead him to doubt its correctness.

Much respect is due to practical construction when it does no violence to language, and has been so long continued as to show general acquiescence; but in this case the present refusal is from the same officer whose predecessors have given the other construction, and who has refused to recognize it. The law has not been in force long enough to make it evident that this construction has been brought home to the attention of the various departments of the government, and approved by their acquiescence. It would require a very clear case of practical acquiescence to authorize us to compel the head of a bureau to follow precedents which he does not himself regard as binding, unless they are at least so harmonious with the language of the law as to create no repugnance to it. We cannot avoid the necessity of looking at the statute itself.

When we do this, we find that it does not group together under one name or class all companies not originating in Michigan, but divides them more than once into companies of other states and foreign companies. The use of the word "states" is manifestly confined to our own communities within the United States. In one sense, nations are often and properly designated as states; but where companies formed under the laws of foreign governments are mentioned as distinct from companies of other states, we cannot suppose the repetition and distinction are meaningless. If no differ-

ence was intended to be recognized, the language used is very inappropriate.

When, after mentioning both of these classes, the Legislature proceeded to provide that companies which had deposited securities to the amount of $100,000 in the proper custody in the states in which they were organized need make no deposit here, we must assume the omission to cover foreign companies by this exemption was intentional. We may not be able to tell just what reasons influenced the Legislature, but it is easy to see differences which might have been considered. The object of providing the deposit is to secure a fund to which our citizens may have convenient access for indemnity for their unpaid losses. A deposit abroad would be of no practical use to them in most cases, because not readily accessible. If we give the word "state" a sense which will include a foreign nation, the language of the statute would require the deposit to be made in the foreign state to which the company belonged. That would not help this relator, because the deposit is in New York, and not in Great Britain. It is therefore claimed that what the statute means is that the deposit should be made in another American state, but that the word "organized" may mean licensed to do business. This is not a natural meaning. A British company may be licensed to do business in every state of the Union. Under the interpretation claimed, it might have a single deposit in any of the states. So a New York company might be licensed in every state. This same construction would allow the deposit of that company to be made anywhere else as well as in New York. But if the statute said nothing about foreign companies, no one would imagine that an American company could be treated as organized anywhere but in its home state. Language which is so plain and definite when so applied cannot be made to mean something else, and applied to objects which in no way fulfill its conditions.

If there were no way in which foreign companies could otherwise get a license here at all under this statute, which expressly covers them, we might be called on to devise some construction which would save the whole statute. This is a rather dangerous process, and, if allowable at all, can only be made so by necessity. But here there is no such necessity. They can get it by making a deposit here. The conditions on which companies can be exempted from this general rule are expressly confined to American companies, and can reach no others.

It is not our province to speculate on the possible views which may have influenced the Legislature. It was within their discretion to impose these conditions. If they acted inadvertently, they can very easily remit them. But we have no such power.[1]

The *mandamus* must be denied.

The other Justices concurred.

---

[1]See Act No. 272, Laws of 1887, amending section 2 of Act No. 237, Laws of 1881, by making provision for such cases.