## MANISTEE & GRAND RAPIDS RAILROAD CO. *v.* AUDITOR GENERAL.

1. RAILROAD TAXATION—EXEMPTIONS—STATUTES.

    The provision of Act No. 174, Pub. Acts 1891, that the rate of taxation fixed thereby, or by any other law of the State, shall not apply to any railroad company "hereafter building and operating" a line of railroad within a specified part of the State until it has been operated for 10 years, does not exempt from taxation any portion of a railroad the construction of which was begun nearly two years before the act took effect, and which at that time was in such condition, for nearly two-thirds of the entire line, that trains were being run over it, and freights earned.

2. SAME—COMPUTATION BY COMMISSIONER OF RAILROADS—TIME OF MAKING—DIRECTORY PROVISIONS.

    1 How. Stat. § 3358, providing that the commissioner of railroads shall, on or before May 15th of each year, make and file with the auditor general a computation of the amount of taxes due from each railroad company in the State, basing the computation upon the report of such company for the preceding year, is directory, and not mandatory, as to time, and a computation made after the specified date by the successor in office of the commissioner whose duty it was to make the computation, based upon the proper report of the company, is valid.

Appeal from Manistee; McMahon, J. Submitted November 4, 1897. Decided December 15, 1897.

Bill by the Manistee & Grand Rapids Railroad Company against Stanley W. Turner, auditor general, to set aside certain taxes. From the decree rendered, both parties appeal. Bill dismissed.

*T. J. Ramsdell* (*Hanchett & Hanchett*, of counsel), for complainant.

*Fred A. Maynard*, Attorney General, for defendant.

MOORE, J. Complainant filed a bill to set aside taxes assessed by the commissioner of railroads against the complainant company for the years 1891, 1892, 1893, and 1894. A decree was entered in the court below setting aside the taxes for 1891 and 1892, and sustaining them for 1893 and 1894. From this decree both parties appeal.

The record shows that the complainant company is situated north of parallel 44 of latitude; that its road is for the purpose of carrying freight; and that it is not a road for carrying passengers. It was organized November 11, 1889, and in December of that year commenced the construction of its line of road, which at the date of the institution of this proceeding was about 31 miles long. The work progressed so that in August, 1891, about 18 miles of track was laid and partly ballasted, and the company began to haul logs for the owners of timber along the line of its road and to carry camp and mill supplies. Prior to October 2, 1891, it had hauled about 5,000,000 feet of logs and 200,000 pounds of mill and camp supplies. The roadbed was in such condition at this time that it was necessary to run the trains very slowly. Prior to October 2, 1891, the receipts for the traffic of the road amounted to about $7,000. The complainant reported from year to year the business of the road to the commissioner of railroads. This official did not make or file with the auditor general any computation of any tax against said complainant for the years 1891 and 1892. In May, 1894, the then commissioner of railroads made and filed with the auditor general a computa-

tion of taxes as due from the complainant, not only for the year 1893, but also for the years 1891 and 1892. A year later a like computation was made for the taxes of 1894. It is to set aside these taxes that this proceeding is instituted.

The taxes were assessed by virtue of the provisions of Act No. 174, Pub. Acts 1891, which act took effect October 2, 1891. This act has a provision reading as follows:

"*Provided further*, that the rate of taxation fixed by this act, or any other law of this State, shall not apply to any railway or railroad company hereafter building and operating a line of railroad within this State north of parallel 44 of latitude, until the same has been operated for the full period of 10 years," etc.

It is the claim of complainant that its line of road was not built and operated until the act took effect, and for that reason it is exempt from taxation. In construing this statute it may be pertinent to inquire what is its purpose. It is a matter of common knowledge that the portion of Michigan lying north of parallel 44 of latitude is much more sparsely settled than the southern portion of the State, and does not offer so inviting a field for the investment of capital. It was undoubtedly the purpose of this legislation to encourage capital to invest in new railroad enterprises in the newer portion of the State. The complainant, however, was organized and entered upon the construction of its line of road nearly two years before the act became operative, and it can hardly be said the purpose of the act was to apply to corporations like the complainant. Can it be said that complainant's line of road is included in the phraseology of the statute, when it says the rate of taxation shall not apply to "any railroad company hereafter building and operating a line of railroad?" As has already been stated, the complainant had entered upon the construction of its line of road nearly two years before this act took effect, and when it took effect had nearly two-thirds of its line in such condition that it was running trains over it and earning freight.

"As taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms, and it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain. It is also a very just rule that, when an exemption is found to exist, it shall not be enlarged by construction. On the contrary, it ought to receive a strict construction; for the reasonable presumption is that the State has granted in express terms all it intended to grant at all, and that, unless the privilege is limited to the very terms of the statute, the favor would be extended beyond what was meant." Cooley, Tax'n (2d Ed.), 204; *Lake Shore, etc., R. Co.* v. *City of Grand Rapids,* 102 Mich. 374, 380 (29 L. R. A. 195).

We think it clear that the complainant is not within the exemption of the statute.

Complainant claims that the person who was commissioner of railroads holding office in 1892 and 1893 is the only officer authorized to make the assessment of the taxes of 1891 and 1892, and that the act of his successor in office in making the assessment of these taxes in May, 1894, was unauthorized and beyond his jurisdiction. It is argued by counsel for complainant:

"The whole authority for making the assessment by the commissioner of railroads is found in 1 How. Stat. § 3358. The provision is explicit that he shall make the assessment on or before May 15th, upon the report of the railroad company made for the preceding year. The assessment so made becomes due as a tax on the 1st day of the following July. It then becomes a lien upon the property of the railroad company. Taxation is a proceeding which is adverse to the taxpayer, and depends wholly upon statutory provisions. A tax lien cannot be created against the taxpayer's property except by a strict compliance with the provisions of the statute by the officers who assess or levy the tax. This is a fundamental law in taxation. Cooley, Tax'n (2d Ed.), 217, 218, 323-325; 25 Am. & Eng. Enc. Law, 76-79, 202; *Hoyt* v. *City of East Saginaw,* 19 Mich. 45, 46; *Scofield* v. *City of Lansing,* 17 Mich. 437, 446, 447; *Seymour* v. *Peters,* 67 Mich. 415.

"The omission or neglect of the railroad commissioner to assess the tax on or before May 15, 1892, upon the report for 1891, or his omission or neglect to assess the tax on or

before May 15, 1893, upon the report for 1892, would not make an assessment of such tax, made upon the same reports by the auditor general, a valid tax, for the reason that the statute confers upon the person holding the office of commissioner of railroads the power to assess the tax, and confers the power upon no one else. If he omits to do his official duty, no provision is made for its being performed by any one."

The logic of this reasoning is that, though the legislature has by express enactment provided for a specific tax, the amount of which can be determined by a simple computation, its right to the tax can be utterly lost because an administrative officer does not, through inadvertence or through misinterpretation of the law, or for any other reason, make the computation at the time when he is directed to do so by the statute.

The duty to make the computation required by the statute does not devolve upon the individual in his personal capacity, but it devolves upon the official; and, though the computation which ought to have been made in the years 1892 and 1893 was not in fact made until 1894, it was made by the same official, though a different person who made it, as though it had been made at the time designated by the statute. The rate of the tax was fixed by the legislature. The only effect of the delay, so far as the complainant is concerned, is that it has not been required to pay the debt due the State as soon as it would have been obliged to do if the direction of the statute had been followed. We think the provision of 1 How. Stat. § 3358, as to the time when the commissioner of railroads shall compute the amount of tax due, is so far directory as to be brought within the decisions of this court in *People* v. *Supervisors of St. Clair Co.*, 30 Mich. 388, and *County of Oceana* v. *Township of Hart*, 48 Mich. 319. In the last-named case there had been a failure by the board of supervisors to spread upon the roll delinquent taxes at the time provided by the statute, and in disposing of the case it was said:

"The county is entitled to a return of money or delinquent taxes to the full amount of the tax levy, and the failure to have such a return arises out of the town treasurer's delinquency. By section 1105 of the Compiled Laws, all losses sustained by such default are chargeable to the township, and the board of supervisors are required to add the amount to the next year's taxes. It is claimed that failure to add the sum to the next year's taxes leaves no future power in the board to require their collection, as the statute requires no action but for the next year. We have no doubt the time provision is directory, and that a failure to act at once does not cancel the debt. It would require clear language to justify the inference that an obligation of this sort can be canceled by such inaction."

The debt due the State by the complainant cannot be canceled by such inaction of the commissioner of railroads as was shown here. See Cooley, Tax'n (2d Ed.), 289; Suth. Stat. Const. 575.

The complainant contends that, if the court finds from the record that the 18 miles of road was so far completed as to take the road out of the exemption of the statute, the decree should be modified so as to subject the road to taxes on the gross earnings of the 18 miles only. The exemption mentioned by the statute refers to "a line of railroad" hereafter built and operated, and not to such portion of the line as may hereafter be constructed. It is evident that the line of road which the complainant expected to build when it was incorporated was the line which it has since built. The tax should not be confined to the 18 miles, but should be assessed against the gross earnings of the line, a major part of which was constructed and operated when the law went into effect.

The decree canceling the taxes of 1891 and 1892 should be reversed, and the bill dismissed, with costs of both courts.

The other Justices concurred.