STATE ex rel. G. A. ZIMMERMAN v. CITY OF ST. PAUL and Others.[1]

| 81 | 391 |
|----|-----|
| Case 1 | |
| 84 | 430 |

November 20, 1900.[2]

Nos. 12,458—(233).

## City of St. Paul—Board of Police.

At an election held May 1, 1900, the people of the city of St. Paul adopted a new charter. It provides for a board of police to be appointed by the mayor, and to such board is given the appointment, management, and control of the police department. Such board having summarily dismissed sixty members of the police force, who were holding over under the old law, in an action to test the power so to do, *held*:

## Intent of Legislature.

1. The intention of the legislature in framing the law must be ascertained from its contents, if its provisions are consistent with each other and in harmony with the scope and spirit of the act.

## Act of Legislature.

2. The act in question comprises a complete and consistent system, the scope and spirit of which is ascertainable without resorting to the history of its development and adoption.

## Dismissal of Policemen.

3. Under its provisions, the board of police may summarily dismiss members of the police force, if for the good of the service, although such members are not guilty of misconduct or breach of duty.

## Same—Misconduct.

4. No member of the force can be dismissed for misconduct or breach of duty without notice and a hearing upon charges preferred.

[1] STATE ex rel. JOSEPH KING v. CITY OF ST. PAUL and Others.

November 20, 1900.

Nos. 12,457—(232).

PER CURIAM.

Upon the main question, this case is governed by the decision in State v. City of St. Paul, and it is unnecessary to determine whether the relator was in fact an officer under the old charter.

Judgment affirmed.

[2] Reported in 84 N. W. 127, 1116.

### Policemen Holding Over.

5. Old members holding over under the old charter stand in the same position as new appointees under the new charter, and should be removed only for cause assigned, or for the purpose of securing a more efficient service.

Writ of certiorari issued from the district court for Ramsey county to defendant city, R. T. O'Connor and others, as the board of police of said city, and Charles W. Copley, as secretary of said board, to review the action of the board in removing relator from the position of police patrolman.    The matter was heard before O. B. Lewis, J., who made an order quashing the writ.    From a judgment entered pursuant to the order, relator appealed.    Affirmed.

*Ambrose Tighe* and *Oscar Hallam*, for appellant.

*James E. Markham* and *Michael & Johnston*, for respondents.

LEWIS, J.

Prior to May 1, 1900, the municipal code of St. Paul provided that the mayor of the city appoint policemen with the advice and consent of the assembly, and that policemen might be removed at any time by the mayor upon concurrence of a majority vote of the common council, and that the council could remove by a two-thirds vote, without the preferment of charges; also that the mayor might remove any member at any time within six months from the date of such member's appointment.   On May 1, 1900, the people of St. Paul voted upon and adopted a new charter, which went into effect on that day.   Chapter 7 of the new charter contains the provisions in reference to the police department.   Such department consists of a board of police, a chief of police, and a police force.   It is provided that the police board shall be appointed by the mayor, shall serve without compensation, shall have been citizens of St. Paul for at least one year, and hold no other office under the city government during their terms of office.   After the first board, the term is five years, one to be appointed annually.   Into the hands of the board thus selected and constituted is given the complete administration, management, and control of the police department.   The first board was duly selected and organized, and on three separate

occasions, June 11, August 8, and August 20, 1900, the board unanimously passed resolutions summarily dismissing sixty members of the police force who were still holding over, having been appointed under the old code, and the vacancies thus occasioned were immediately filled by the appointment of new men.

The appellant was one of the officers thus removed, and, desiring to test the validity of the board's action, petitioned the district court for a writ of certiorari to review the proceedings. The petition recited the facts above stated. A writ was issued, and respondents answered, admitting the removal, alleging that it was for the good of the service of the police department, and not by way of punishment, and pleaded justification under the provisions of the new charter. The court below quashed the writ, and the petitioner appealed.

Section 2 of subdivision 1 of chapter 7 reads as follows:

"Except as in this chapter otherwise provided, all members of said police department shall hold office during the pleasure of said board."

Section 1 of subdivision 3 provides that the board of police shall have power

"To appoint, promote, suspend, disrate, reprimand, dismiss or otherwise punish any member of said police department in the manner hereinafter provided, and to require a bond from any member of said department and prescribe the conditions thereof."

Subdivision 6 reads as follows:

"Promotions, Suspensions, Dismissals and Disratements.

"Section 1. Any member of said police force who shall be guilty of misconduct or breach of duty shall be liable to be punished by said board by reprimand or by temporary suspension without pay, not to exceed one month, or by fine not to exceed one month's salary, or by reduction in rank, or by dismissal from service.

"Sec. 2. Before said board shall punish any member of said police force by dismissal it shall notify such member and he shall be entitled to a public hearing under such rules and regulations as the board may prescribe, at which he may appear personally and by counsel and may require said board to hear and enforce the attendance of witnesses in his own behalf."

Section 6, subd. 7, provides that all officers, employees, and members of the police force and department of said city at the time when the charter became effective should continue to hold their several offices until removed by the said board.

It is not uncommon for judges to assume knowledge of extrinsic facts when interpreting statutes of peculiar public importance. To a certain extent such practice is warranted when it is necessary to consider the history of, and the circumstances connected with, the birth of the statute, in order to discover the intent with which it was adopted. But the courts should resort to such method of interpretation only when the enactment is so ambiguous that the intent of its makers must be sought beyond its own limits.

Applying to this case the usual rule of construction, our first purpose should be to determine the intention of the framers of the act by a consideration of the act itself. If the inconsistencies to which our attention has been called should turn out to be only apparent, and if those various sections and clauses may be harmonized and treated as consistent factors and within the scope and spirit of the whole act, then interpretation is at an end.

The question before us is whether the board of police possesses the power to summarily dismiss members of the police force. The argument presented for our consideration on behalf of appellant is that the provisions above referred to are inconsistent, and cannot stand together; that subdivision 6 comprises the only method of causing a dismissal; and hence the declaration in subdivision 1 that the members shall hold office during the pleasure of the board has no effect. In other words, that the exception by provision otherwise is covered by subdivision 6, which excludes the general power to dismiss contained in the prior section. But it is claimed, if it is not apparent from the reading that the board were by subdivision 6 deprived of the general authority expressed in the prior section, then no contrary intention is expressed, the act in that respect is ambiguous, and appellant's interpretation is the one most in harmony with the scope and spirit of the act.

As to the object sought to be attained by the adoption of the new charter, we may consider the provisions of the old code and compare

them with the new.    In the former there is an apparent purpose to limit the appointing power in the right to make indiscriminate removals without cause, and certain checks are provided by the time of service and concurrence on the part of the common council. However, the act was so framed that it made the appointing power, the mayor of the city, the responsible head of the police force, and it may be conceded that it was the purpose of the framers of the new law to remedy defects which permitted such abuses as may have grown up under the former system.    The principal change made is in the establishment of the police board, and delegating to it the appointing, managing, and dismissing power.    The selection of the board of police is given to the mayor, but the members are required to serve without pay, hold no other office, and the term is five years. The evident intent of those who drafted this act was to provide a system which would result in the selection of a commission composed of public-spirited, fair-minded men, who would rise above personal and political considerations, and administer the police department upon the basis of efficiency alone; and, although the summary dismissal of sixty men without assigning definite cause may raise a presumption that the commission have not entered into the spirit of the reform act, yet in construing the act we cannot consider such result.    It is not a matter in reference to which the courts should assume any knowledge, and, from a consideration of the law itself, it is to be presumed that such removals as the board may have made were made for the general good of the service.    We are unable to discover any such inherent difficulty or inconsistencies in the scheme adopted as to make it necessary to go outside of its provisions in order to discover its purpose, scope, and spirit.

Coming, now, to a consideration of the apparently inconsistent clauses, we find no difficulty.    By giving each section its proper weight, there is consistency and harmony throughout.    If the exception mentioned in section 2, subd. 1, refers to subdivision 6, those provisions are not necessarily exclusive of other powers of the board to dismiss for other reasons.    Subdivision 6 deals with the misconduct of members, and provides a method of punishment upon notice and a hearing.    An efficient member might be charged with some

offense; so an inefficient man could be dismissed for the good of the service, although he be not charged with misconduct or breach of duty. If, in fact, a member is guilty of misconduct or breach of duty, he cannot be dismissed for that reason without a hearing. This provision is for the protection of the men, to enable them to meet such charges. It is not intended as a limitation upon the powers of the board to remove men for other reasons of inefficiency, such as age, health, or temperament. Again, bearing in mind that section 2 of subdivision 1 is under the head of "Organization," and is in a general way dealing with the tenure of office of the members of the police department, the exception may apply to that class of officers whose term is fixed by the act, as the chief of police, whose term is fixed at two years. In either case there is a reasonable application of the clause containing the exception.

Neither do we find any difficulty in the language employed in section 1 of subdivision 3. The words, "as hereinafter provided," do not necessarily limit the authority to dismiss which is implied in the preceding provision, that members shall hold office during the pleasure of the board. Subdivision 3 has reference to dismissals as set forth in the subsequent subdivision, 6, for misconduct or breach of duty.

The provision that the members serving under the old charter shall continue to hold their several offices until removed by the board is no limitation upon the right of removal. Such members were in no better position than new appointees. Nor is this section positive authority to dismiss members holding over, simply because they are such, regardless of other considerations. It is to be presumed that they will be treated upon the same basis as new appointees, and not be relieved except for cause or to make way for better men. Such holding is certainly in accordance with the manifest intention of the act, viz. to retain the services of able and experienced men, to weed out the inefficient, and gradually strengthen the force by the addition of the best material attainable. For these reasons the action of the trial court in quashing the writ must be sustained.

Judgment affirmed.