THE DAVIS HOLDING CORPORATION ET ALS. *vs.* ROBERT H. WILCOX, COLLECTOR OF TAXES IN THE TOWN OF GREENWICH.

Third Judicial District, Bridgeport, October Term, 1930.

MALTBIE, HAINES, HINMAN, BANKS and AVERY, Js.

Argued November 7th, 1930—decided January 13th, 1931.

*H. Allen Barton,* for the appellants (plaintiffs).

*William S. Hirschberg* and *John R. Deming,* for the appellee (defendant).

MALTBIE, J.   By a Special Law of 1911, the town of Greenwich was divided into nine sewer districts and provision was made for the construction and mainte- nance of sewer systems in each district.   Special Laws of 1911, p. 412.   This law was somewhat amended in 1915.   Special Laws of 1915, p. 221.   It provides that the sewer commissioners of the town either on their own initiative or upon a petition of a majority of the electors in any district are to prepare plans for a pro-

posed drain, sewer system, disposal works, or either, with an estimate of the cost, and submit them to a special town meeting called to consider them, and that if a majority of the electors present and voting approve the commissioners shall proceed with the work; that if the town votes to construct such a drain, sewer system or disposal works, "or any part thereof," maps, plans and specifications are to be filed in the town clerk's office; that the commissioners shall advertise for proposals for the construction of the drain, sewer system or disposal works, or either, "or such portion thereof" as may have been approved and for the letting of contracts for the work; that a map shall be made of so much of any district as is specially benefited by the construction, showing the highways and several parcels of land, and the expenses of construction shall be apportioned by the commissioners against the land specially benefited in accordance with the benefits received, with provision for notice to landowners affected, a hearing, an appeal by any person aggrieved, and for the collection of the assessments and liens upon the land against which the assessments are made in case of nonpayment. After a drain, sewer system or disposal works are constructed, they are to be maintained by the commissioners and the cost is made a charge against the property specially benefited; the commissioners are to prepare an estimate of the cost for each system separately and appropriations therefor are to be made as they are for other departments of the government; the commissioners are to present to the town board of estimate and taxation a statement showing the total assessed valuation upon the grand list of the town last completed of the real estate benefited by each sewer system and that board then determines tax rates to be laid upon the valuation of each parcel of property

specially benefited, to meet the appropriation, and this tax rate is to be submitted, according to the provisions of the Act, as are other town tax rates to a town meeting for approval; and the taxes so assessed are to be collected by the town tax collector upon rate bills signed by the commissioners, as are other town taxes. Section 10 of the law gives the commissioners power before the construction of any sewer in a district has commenced to make such changes in the boundaries of a district as may be necessary from an engineering standpoint; and § 18 gives them power to connect any new or existing sewer with one already in existence, with provision for the determination and apportionment of the value of such connections upon property specially benefited, and for an assessment of such apportionment against those properties.

In 1918 the commissioners completed the construction of a sewer system in the ninth district. It consisted of mains and a disposal plant, with three underground septic tanks and a pump to carry off the sludge to a drying bed, to which later were added two open sludge beds. After the system was completed the sewers were extended into a portion of the territory included in the eighth sewer district and, as the finding, unquestioned in this particular, states, this was done pursuant to § 18 of the Special Law and with an assessment of the value of the connection upon properties specially benefited as provided therein. The commissioners and town officers received complaints of noxious and offensive odors emanating from the sludge beds at the disposal works and they were threatened with suit unless the nuisance was abated. Accordingly, in 1928, the commissioners, in presenting to the board of estimate and taxation their estimate of money required to maintain the system for the next year included an item of $15,000 to cover the cost of

an enclosure over one of the existing sludge beds, and the item was included in the appropriations recommended by the board and in those made by the town. Thereafter the commissioners proceeded to construct the enclosure. The plans called for a building fifty-nine feet long by forty feet wide, with a heavy concrete foundation and substructure, reinforced by steel, and a superstructure with a steel frame covered by heavy sheet glass. The total cost of this, with some incidental work upon the filtration bed which was a part of the sludge bed, was $12,676. The commissioners thereupon presented to the board of estimate and taxation a statement purporting to show the total assessed value upon the last grand list of the town of all the real estate specially benefited by the system, and the board laid a tax upon the property of seven mills upon the dollar. The plaintiffs own land in the ninth sewer district and bring this action for themselves and all others owning land in the district similarly affected to restrain the defendant from proceeding to collect this tax and for a declaration that their property is not subject to a lien on account of it and as to their rights in the premises. The trial court found the issues for the defendant and gave judgment for him and the plaintiffs have appealed.

The basic question upon the appeal is whether or not the building of the structure over the sludge bed was properly dealt with as an item in the maintenance of the sewer system or should have been treated as original construction, requiring approval by a special town meeting called for that purpose and an assessment of benefits in the manner provided for such construction. The word "maintain" has no precise legal significance in the construction of statutes, its meaning varying with the statute in which it is used, the subject-matter of the law, and the purpose to be accom-

plished by it. Decisions in other States construing particular statutes are therefore of little assistance to us. One of the approved definitions is "to hold or keep in any particular state or condition, especially in a state of efficiency or validity." Webster's New International Dictionary. See *Ferguson* v. *Rochford,* 84 Conn. 202, 204, 79 Atl. 177; *Boston, Petitioner,* 221 Mass. 468, 475, 109 N. E. 389; *Louisville & N. R. Co.* v. *United States Iron Co.,* 118 Tenn. 194, 211, 101 S. W. 414.

If we turn to the law in question there is present significance in two of its general features. It provides for the manner in which the construction of "a drain, sewer system and disposal works or either" shall be initiated, authorized and the cost thereof collected; but nowhere in it is any specific provision made for the procedure to be adopted in making improvements to disposal works which have already been constructed and recovering the expense thereof. To be sure the law in one place qualifies the words quoted by adding "or any part thereof," and in another by the phrase "or such portion," but in both instances the context shows that these phrases have reference to a situation where the town meeting votes to construct not all but only a part of the work proposed by the commissioners. Improvements to existing disposal works can therefore be brought within the terms of the law only by a somewhat liberal construction either of the provisions for the original construction or of those for maintenance after construction. To limit the word "maintenance" to the mere repair of disposal works and their preservation in the condition in which they were left after the original construction would be to require that all improvements, no matter if of small cost, must be regarded as construction, requiring the calling of a special town meeting and, if approved, pro-

cedure by assessment to secure the cost. We cannot think that such a result was intended. Again, the procedure by assessment to pay for the expense of construction requires that the cost be "apportioned by said commissioners against the land specially benefited within said district in the proportion, as nearly as may be, to the special benefits which each lot or parcel shall derive therefrom." Such an apportionment cannot legally exceed the actual benefits which accrue to each lot from the work in question. *Whitmore* v. *Hartford,* 96 Conn. 511, 519, 114 Atl. 686. There are obviously great practical difficulties in showing actual benefits to property connected with a sewer leading to disposal works, which have accrued from some improvements reasonably required for the efficient operation of the plant. Thus, in the instant case, it is not questioned that the building of the structure over the sludge bed to prevent offensive odors from it was a proper improvement to make; yet an improvement of this nature might well not increase the efficiency of the plant to care for sewage or confer any actual benefits to properties draining into it but located at a considerable distance. Moreover, if the cost is small, the procedure for assessing the expense of construction is cumbersome to an extent out of proportion to the needs of the situation. In many instances it would be much more practicable, if not necessary, to collect the expense of improvements by regarding it as matter to be included in the tax levy to pay the cost of the maintenance of the disposal works rather than as an item of construction requiring an assessment. These considerations are significant as showing that the legislature in the use of the word "maintenance" did not intend it in any narrow sense but that certainly some improvements to the disposal works may fairly be included within it.

The plaintiffs seek to establish a practical construction of the law in accordance with their claims that such an improvement as the one we are considering is to be considered as construction for which an assessment is to be made rather than as an item of maintenance. They ask to have added to the finding the facts, which are undisputed, that before securing the recommendation by the board of estimate and taxation of the appropriation upon which the tax here in question is based the commissioners twice applied to it for a similar appropriation, and once the board refused to recommend it and once it recommended it to a special town meeting which did not approve it. But these facts do not support their claims, because if the improvement was regarded as construction, the plans, under the law, should have been submitted by the commissioners themselves to a special town meeting, without recourse in the first instance to the board, and also because the call for the meeting which passed on the recommendation of the board stated that if the appropriation was approved the town was "to be reimbursed for this expenditure through tax against the benefited property." The plaintiffs also point to the fact that the expenses of the building of new sewer extensions and of the construction of the two sludge beds added after the disposal works were completed were paid by assessment upon benefited property, but the sewer extensions were clearly construction within the meaning of the law and the two instances of the building of the sludge beds can hardly amount to a practical construction, when the law is relatively new and the same official body which in those instances adopted that construction has now adopted a different one. *Employers' Liability Assurance Co.* v. *Commissioner of Insurance,* 64 Mich. 614, 616, 31 N. W. 542. The sludge beds, as has been pointed out, were the

source of noxious and offensive odors, there had been complaints to the sewer commissioners and the town officers about them, and suits were threatened unless the nuisance was abated. It was necessary to build the structure in question in order to abate it and hence, as the trial court finds, to maintain the plant and keep the sewer system in operation. In view of this situation and the rather small expenditures necessary to build it, we agree with the trial court in holding that this expense was properly regarded as a part of the cost of maintenance of the plant and properly included in the tax laid to cover that cost.

This disposes of all claims of error in the conclusions of the trial court except those which arise out of the manner in which the tax for maintenance was laid and attempted to be collected. The plaintiffs complain of the inclusion in the property assessed of that in the eighth district served by the extension of the sewer from the ninth district, without any change in the boundaries of either district. Undoubtedly, in building a sewer in any district, the law requires that district to be separately treated in accordance with its provisions for the original construction of a sewer. But it does not follow that a sewer once built in one district may not be connected with the sewer or the disposal plant in another and the whole system then operated as one, without any change of boundary lines. The commissioners are given power broadly to connect "any new or existing sewer or disposal works" with one already in existence and the provisions for laying a tax for maintenance provide for a separate statement of the real estate specially benefited, not according to its location in the one district or another, but according as it is benefited "by each sewer system." We see no practical reason why a sewer in one district, once constructed, may not be connected with

a disposal plant in another and that plant with all sewers running into it maintained as one system. Moreover, we do not see how the inclusion of the sewer in district eight in the laying of a tax for the structure in question could be otherwise than a benefit to the plaintiffs, owning property in district nine, by reason of its increase in the amount of real estate subject to the tax; so that they are hardly in a position to complain.

Section 22 of the law provides that on or before the second Saturday in March the board of estimate and taxation shall determine the tax rate to be laid to pay the cost of maintaining each sewer system and concludes: "The rates of taxation so determined shall be submitted for review to the town meeting to which the rate of taxation for town taxes is submitted under section nine of said act changing the form of government for the town of Greenwich, and shall be acted upon in the same manner and with the same effect as is provided for, in said section, for the town tax." Section 9 of the Act referred to provided that the general tax rate for the town should be determined by the board and should then be submitted for review to a town meeting to be called by the selectmen and be held on the third Saturday of March. Special Laws of 1909, p. 951. The entire law in which this section occurs was repealed by the legislature and another substituted in 1921, under the terms of which the tax rate for the town was finally determined by the board on or before November 25th in each year, without review by any town meeting and there is now no town meeting in Greenwich, as specified in the law we are considering, to which the rate of tax for town taxes is submitted, nor any provision for a stated town meeting at any time after the determination of the tax rate for maintaining the sewer system until the following

October. Special Laws of 1921, pp. 825, 830. The only procedure for a review of that rate in a town meeting specified in the Act having been abolished, the legislature has clearly indicated an intent to do away with such a review and it was repealed by implication. Now that the provision for the review of a tax rate by a town meeting to be held in March is removed from the law, the failure of the board to determine that rate until April 19th can be held no more than a disregard of a directory provision. *Second School District* v. *Glastonbury,* 86 Conn. 590, 596, 86 Atl. 577; *Williams* v. *School District in Lunenburg,* 38 Mass. (21 Pick.) 75; *Boody* v. *Watson,* 64 N. H. 162, 182, 9 Atl. 794; *Manistee & G. R. R. Co.* v. *Auditor General,* 115 Mich. 291, 73 N. W. 240; *Baltimore, C. & A. Ry. Co.* v. *Wicomico County,* 93 Md. 113, 124, 48 Atl. 853; 3 Cooley on Taxation (4th Ed.) p. 2143.

It appears in the finding that the commissioners omitted from the statement of property specially benefited made to the board of estimate and taxation for the purpose of fixing the tax rate twelve properties, which were added after the list was delivered to the tax collecter and the tax against which he had demanded of the owners. It also appears as an undisputed fact, which we add to the finding as requested, that no account was taken in making up that list of certain properties upon two streets in which sewers had been completed before the tax was laid, but the cost of which had not then been apportioned to the owners. Apparently it was this last circumstance which was the reason for omitting these properties. The assessment of the cost of construction is not undertaken until the sewer is completed and the procedure must necessarily take some time. There is no good reason and nothing in the law which postpones the levy of a tax for maintenance upon any property

specially benefited when a sewer has been actually opened for use. The law requires the commissioners on or before the Tuesday preceding the second Saturday in March to present to the board a statement of the total assessed valuation of the real estate specially benefited by each sewer system for the purpose of enabling it to fix the tax rate. This list should contain all property specially benefited by reason of sewers in operation when it is prepared, even though the cost of construction has not been paid. As this list is the basis upon which the tax rate is fixed, the commissioners should exercise caution to see that no properties specially benefited are omitted. But the mere fact that some properties are omitted, particularly if no bad faith be shown—and none appears here—is not sufficient to invalidate the whole proceedings. If it were, there is hardly an assessment proceeding which would not be vulnerable to attack, and the public interest is too much at stake to permit the defeat of the whole proceedings, even though thereby the burden of those assessed be made somewhat heavier. Taxation at best can but approximate equality and inequalities due to the omission of some properties which should be included in an assessment must often be endured that government may be carried on. *Watson* v. *Princeton,* 45 Mass. (4 Metc.) 599, 601; *George* v. *Second School District in Mendon,* 47 Mass. (6 Metc.) 497, 513; *Weeks* v. *Milwaukee,* 10 Wis. 242, 264; *Dunham* v. *Chicago,* 55 Ill. 357, 361; *Auditor General* v. *Sage Land & Improvement Co.,* 129 Mich. 182, 88 N. W. 468; 3 Cooley on Taxation (4th Ed.) § 1162. That there might not be omissions so seriously affecting the basic fairness of the proceeding as to invalidate the whole we are not called upon in this case to say; for, while it does appear that of the total number of front footage of property benefited by the

sewer system in question, 51,194, property having a front footage of 1828 feet was entirely omitted from the list given to the tax collector, we have no means of knowing the valuation of this property, and so of determining the extent to which the tax levied upon the property actually assessed was affected by the omission. One plaintiff, it is true, was asked what would be the difference in cost to him between an assessment made in accordance with the procedure for the construction of sewers and the amount due on account of the tax for maintenance, but this obviously would not show the effect upon the tax to be paid of the omission of the properties left out of the list prepared by the commissioners and the court committed no error in excluding the question. The plaintiffs have not shown a sufficient reason in the fact of the omission of the properties to invalidate the tax as laid against those which were actually assessed.

Prior to May 1st, 1929, the commissioners made up a list purporting to show the amounts due on account of the tax from each property owner specially benefited by the sewer system and delivered it to the defendant tax collector and he made demand for those amounts, payments to be made during that month. The list was not, however, signed by the commissioners nor was any tax warrant issued until June 10th. The Validating Act of 1929 contained among its other provisions the following: "In all cases in which any mistake, irregularity or omission has occurred in any of the steps preparatory to the issuing of a rate bill for any tax or in the preparation or issuing of such rate bill, or in the warrant for the collection thereof, which mistake, irregularity or omission is not shown by the taxpayer to have made his tax materially greater, such rate, tax, rate bill, warrant and all proceedings or actions thereunder shall be legal and valid and all

obligations and securities given by any collector of taxes for the collection or payment of such taxes or faithful performance of his duties shall be legal and binding." Public Acts of 1929, Chap. 289, § 2. This provision is broad enough to cure the delay of the commissioners in signing the list and issuing the tax warrant. As the action before us was not begun until September, 1929, any question of the validity of this Act by reason of its not having been approved by the Governor within three days after the adjournment of the legislature is obviated by its re-enactment at the Special Session held in August of that year. Public Acts of 1929 (Special Session) Chap. 1; *Pickett, Pros. Atty.,* v. *Marcucci's Liquors,* 112 Conn. 169, 181, 151 Atl. 526; *Coombs* v. *Larson,* 112 Conn. 236, 152 Atl. 297.

The final claim is that the trial court committed error in some of its rulings on evidence, in addition to the one we have discussed. Two of the paragraphs in the portion of the finding dealing with these rulings, consist merely of discussions between counsel and the court and present nothing reviewable. As far as can be seen from the record, which is not as clear as it might be, two of the questions excluded had to do with the method of assessing the cost of sewer construction, the relevancy or materiality of which does not appear in view of our decision that the expense of building the structure in question was properly treated as a maintenance charge. Two other questions excluded had to do with the abortive attempt of the commissioners to secure an appropriation for building the structure in question before the proceedings involved in this controversy were begun but the plaintiffs proved sufficient other facts to render their exclusion, if it were erroneous, harmless. Even if the plaintiffs had proved, as they attempted to do in the other

questions excluded, that the expense of the structure in question was half the cost of the original construction of the disposal works, in 1918, and had also shown the expense of maintaining the sewer system in other years, we agree with the trial court that these facts would not be sufficient to show the intent of the legislature to be different from that which, as we have seen, is indicated by the controlling circumstances we have discussed.

We have indicated in passing such of the requests for changes in the finding as are material and may properly be granted. The plaintiffs claim that the trial judge should have gone farther than merely finding the issues for the defendant and should have given a declaratory judgment as to the rights of the parties, but the record does not show that this claim was presented at the trial and we therefore disregard it.

There is no error.

In this opinion the other judges concurred.