MINNEAPOLIS-ST. PAUL SANITARY DISTRICT v.
CITY OF ST. PAUL AND ANOTHER.
CITY OF MINNEAPOLIS, APPELLANT.[1]

December 11, 1953.

No. 35,926.

John F. Bonner, City Attorney, and *Charles A. Sawyer* and *Carsten L. Jacobson,* Assistant City Attorneys, for appellant.

*Timothy P. Quinn,* Corporation Counsel, and *Louis P. Sheahan,* Special Assistant Corporation Counsel, for respondent City of St. Paul.

*Thomas W. Walsh* and *Lawrence C. Merthan,* for respondent sanitary district.

DELL, CHIEF JUSTICE.

This is an appeal from a judgment of the district court of Ramsey county in a declaratory judgment action brought by the Minneapolis-St. Paul sanitary district, herein referred to as the sanitary district, against the cities of St. Paul and Minneapolis. The action was instituted to secure a determination of the proper allocation of costs, as between the two cities, of new equipment for the sewage disposal plant, consisting of two vacuum filters and one incinerator costing approximately $200,000.

The sanitary district is a municipal corporation organized by Minneapolis and St. Paul for the purpose of collecting and disposing of sewage under L. 1933, c. 341. It absorbed and took over the duties of the Metropolitan Drainage Commission. The sanitary district has a sewage treatment plant located on Pig's Eye Island in the Mississippi river just below the St. Paul business district. The plant consists of operating buildings, an office, laboratory, and administration building. The cities, under the act, are authorized to permit their surrounding communities to make use of the sewage facilities under an arrangement whereby each city bears the cost of the expense resulting from the increase in sewage flowage attributable to its respective communities. Through a series of meters the flowage attributable to each city is measured and determined.

On April 25, 1949, the chief engineer and superintendent of the sanitary district recommended the purchase and installation of the

new equipment involved herein. A dispute arose between the cities as to the proper allocation of the cost of the equipment. An opinion from the attorney general was requested and procured, and he held that the allocation should be on the basis of the assessed valuation of the property within the sanitary district. Minneapolis objected, claiming that the allocation should be on the basis of the volume of sewage attributable to each city and refused to contribute its share of the cost based on the assessed valuation of the property within the district. This action was thereupon instituted to determine the rights and duties of the two cities. The lower court held that the cost of the new equipment should be a uniform charge upon the entire district on the basis of assessed valuation exclusive of money and credits. Minneapolis appealed from the judgment entered.

The question presented for determination here is whether the cost of the new equipment should be allocated between the cities on the basis of assessed valuation or volume of sewage. This requires a construction of M. S. A. 445.17, subd. 1, the pertinent portions thereof being as follows:

"Except as herein otherwise provided, all costs of operation, maintenance, and repair of joint or common sewers and of all treatment and disposal works and appurtenances thereto for a period of ten years from and after commencement of construction of the disposal system and all costs of land and right of way, construction of joint or common sewers, and of all treatment and disposal works and appurtenances thereto shall be a uniform charge upon the entire district, on the basis of assessed valuation, exclusive of money and credits, to be paid by a uniform annual tax upon the property of such district; * * *. From and after the ten-year period from the commencement of construction, the costs of operation, maintenance, and repair of joint and common sewers, and of all treatment and disposal works and appurtenances thereto shall be allocated in proper proportion to each city within the sanitary district, upon the basis of the total annual volume of sewage contributed by each city as the same shall be measured or estimated and each such city

shall pay such share of the total cost thereof as the volume of sewage contributed by the city and the territory served by such city under contract or otherwise bears to the total volume of sewage."

■ It is elementary that where the language of a statute is clear and unambiguous the statute is not open to construction.[2] "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." § 645.16. Extrinsic aids may be used to solve ambiguities which exist but cannot be used to create them.[3] Before a party may resort to the use of extrinsic aids it must appear that the statute is ambiguous.

Minneapolis claims that, in the light of legislative history and the purpose for which the law was enacted, the statute is clear and unambiguous. In view of the method which it uses in attempting to construe the statute, the import of this contention is that without the help of extrinsic aids the statute is not clear and is ambiguous.

The statute specifically classifies all costs which the district may incur by providing two categories into which such costs may fall, namely:

[2]Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. ed. 442; W. H. Barber Co. v. City of Minneapolis, 227 Minn. 77, 34 N. W. (2d) 710; Arlandson v. Humphrey, 224 Minn. 49, 27 N. W. (2d) 819; City of Minneapolis v. Village of Brooklyn Center, 223 Minn. 498, 27 N. W. (2d) 563; Loew v. Hagerle Brothers, 222 Minn. 258, 24 N. W. (2d) 278; Hickok v. Margolis, 221 Minn. 480, 22 N. W. (2d) 850; State and Port Authority of St. Paul v. N. P. Ry. Co. 221 Minn. 400, 22 N. W. (2d) 569; Martinka v. Hoffmann, 214 Minn. 346, 9 N. W. (2d) 13; Sterling Elec. Co. v. Kent, 233 Minn. 31, 45 N. W. (2d) 709; State ex rel. City of St. Paul v. Oehler, 218 Minn. 290, 16 N. W. (2d) 765; 6 Dunnell, Dig. & Supp. § 8938.

[3]Wisconsin R. Comm. v. C. B. & Q. R. Co. 257 U. S. 563, 42 S. Ct. 232, 66 L. ed. 371; Warner v. Dworsky (8 Cir.) 194 F. (2d) 277; State ex rel. Zimmerman v. City of St. Paul, 81 Minn. 391, 84 N. W. 127; Town of Hinckley v. Kettle River R. Co. 80 Minn. 32, 82 N. W. 1088; Bielke v. American Crystal Sugar Co. 206 Minn. 308, 288 N. W. 584; State ex rel. City of St. Paul v. Oehler, 218 Minn. 290, 16 N. W. (2d) 765.

(1) "* * * All costs of operation, maintenance, and repair of joint or common sewers and of all treatment and disposal works and appurtenances thereto * * *."

(2) "* * * All costs of land and right of way, construction of joint or common sewers, and of all treatment and disposal works and appurtenances thereto * * *."

It then makes provision for the allocation of the costs of these two categories. It provides that the first category, "for a period of ten years from and after commencement of construction of the disposal system," and the second category (here the statute is without limitation as to time) "shall be a uniform charge upon the entire district, on the basis of assessed valuation, exclusive of money and credits, to be paid by a uniform annual tax upon the property of such district." From these provisions of the statute it is plain that the statute provides for the allocation of costs of the first category for a period of ten years on the basis of assessed valuation and for the allocation of costs of the second category permanently on that basis. This is made even more clear further on in the statute where it is provided that, after the ten-year period, the costs of the first category shall be "allocated in proper proportion to each city within the sanitary district, upon the basis of the total annual volume of sewage contributed by each city * * *." An examination of the statute leaves no doubt that the legislature created two distinct methods for allocation of costs of the first category. For the ten-year period from and after the commencement of the construction, the assessed-valuation method was to be used; after that ten-year period, the volume-of-sewage method is to be used. The statute provides for only one method of allocating the costs of the second category, namely the assessed-valuation method.

In attempting to construe the statute Minneapolis endeavors to use extrinsic aids consisting of legislative history, conclusions and recommendations contained in the second annual report of the Metropolitan Drainage Commission, testimony of a former chairman of the commission, and a written opinion of the attorney for the sanitary district in an effort to establish legislative intent and to

show that the language of the statute does not mean what it appears to say. We conclude that the statute itself is clear and unambiguous and is not open to construction. This precludes the use of extrinsic aids and, therefore, legislative history may not be resorted to in its interpretation.[4]

■ Minneapolis also claims that there was a practical construction of the statute by the method used in allocating costs approximating $28,000 between 1944 and 1948, and urges that this practical construction be used in interpreting the statute under consideration here. We are fully aware of the helpful purpose which may be served by the use of practical construction in interpreting written language which is of doubtful meaning. However, practical construction may be resorted to only where the ambiguity of the language requires it. Where the written language of the instrument applied to the subject is clear, whether it be a statute, constitution, or contract, it is neither necessary nor proper to go beyond the wording of the instrument itself. A practical construction of an instrument may not be used to show that it is ambiguous where the instrument is already clear. Since the statute here is clear and unambiguous, there is no cause for considering its practical construction.[5]

■ Minneapolis contends that the cost of the equipment involved here should be classified as operation and maintenance costs. The equipment will constitute a substantial and permanent addition to the existing facilities and the purpose of its installation is to expand the capacity of the plant and to provide for anticipated future needs. It is not an expense incurred in the regular operation of the plant nor is it upkeep or expense necessary to preserve the facilities

[4]McDonald v. United States (8 Cir.) 89 F. (2d) 128; Warner v. Dworsky (8 Cir.) 194 F. (2d) 277; State ex rel. Zimmerman v. City of St. Paul, 81 Minn. 391, 84 N. W. 127; Rice v. City of St. Paul, 208 Minn. 509, 295 N. W. 529; Dougherty v. Holm, 232 Minn. 68, 44 N. W. (2d) 83 (dissenting opinion).

[5]State ex rel. O'Hearn v. Erickson, 152 Minn. 349, 188 N. W. 736; State v. G. N. Ry. Co. 163 Minn. 88, 203 N. W. 453; State ex rel. University of Minnesota v. Chase, 175 Minn. 259, 220 N. W. 951; State, by Burnquist, v. Wm. O'Neil Sons Co. 209 Minn. 219, 296 N. W. 7.

or to keep them from falling into disrepair. It constitutes a capital outlay, an expenditure which clearly falls within the second category—"costs of land and right of way, construction of joint or common sewers, and of all treatment and disposal works and appurtenances thereto." This portion of the statute does not require that there be erection of buildings. The fact that existing buildings need not be enlarged or added to in order to install the equipment does not preclude it from coming within that category.

Minneapolis, in support of its claim that the improvements here should be classified as operation and maintenance costs, cites as authority Davis Holding Corp. v. Wilcox, 112 Conn. 543, 153 A. 169. The statute involved and fact situation presented there are materially different from those before us. Moreover the court there carefully limited its decision to the particular facts of the case. Because of the character of the statute involved, the conclusion reached by the Connecticut court appears to be due to the exigency of the moment. The case is of no assistance here.

We do not consider the allocation of the cost of the equipment on the basis of assessed valuation to be either inequitable, unreasonable, or impracticable and find nothing in the statute which offends Minn. Const. art 9, § 1, the uniformity clause of the state constitution. Other matters discussed in appellant's brief are not of sufficient importance to justify discussion here.

Affirmed.