WINTHROP HUMPHREY ET AL. *v.* NEWMAN E. ARGRAVES, HIGHWAY COMMISSIONER

DALY, C. J., BALDWIN, KING, MURPHY and SHEA, Js.

Argued May 7—decided June 17, 1958

*Curtiss K. Thompson,* for the appellants (plaintiffs).

*Jack Rubin,* assistant attorney general, with whom, on the brief, was *John J. Bracken,* attorney general, for the appellee (defendant).

DALY, C. J.   The plaintiffs appealed to the Superior Court from an appraisal of $1 damages filed by the defendant on July 10, 1956, for the taking of land of the plaintiffs in the town of Guilford for a highway pursuant to the provisions of the statutes. On November 21, 1956, the defendant filed an amended award, appraising the damages at $44,300. The action was referred to a state referee, and he, by his report, found that the taking price, $44,300, was just, fair and reasonable.  After the referee had denied in part the plaintiffs' motion to correct his report, the plaintiffs took exception to the amended

report and to its acceptance. They have appealed from the judgment by which the court overruled their exceptions, accepted the amended report and found that the amount due them as damages for the taking of their land was $44,300.

On July 10, 1956, when the plaintiffs' land was taken, there was a one-story factory building on it which was occupied by Old Guilford Forge, Inc., a tenant on a month-to-month basis paying a monthly rental of $400. The business of this corporation was the manufacture and sale of colonial hardware. It dealt, also, in reproductions of other colonial items. It used the building for its manufacturing operations and as an office and warehouse and conducted an extensive mail order business from the factory. Old Guilford Forge, Inc., had been incorporated in 1950 by the named plaintiff, who was president of it. His wife, the other plaintiff, was secretary. They were also directors, and with their children and other relatives they owned 83 per cent or more of the outstanding capital stock. A salary paid to the named plaintiff by the corporation was the chief source of his livelihood. The plaintiffs purchased the land in July, 1953, with the plan of developing it in keeping with the early American character of their business and of erecting a retail shop and restaurant in addition to the factory building. In October, 1953, after the factory building had been constructed, they learned of the plan for putting the highway through their property. In October, 1954, they purchased another tract of land in the neighborhood as a new location for their business and with the idea of developing it into an early American center.

In the course of the direct examination of the named plaintiff at the hearing before the referee, he was asked whether moving the business of Old Guil-

ford Forge, Inc., to a new location would "have any effect . . . on the earnings or profits of the corporation." The court sustained the defendant's objection to the question. The plaintiffs then claimed, and now assert, that their offer of the testimony was to prove that the moving operation made necessary by the condemnation of the land would require the corporation to expend a substantial sum of money and would result in the interruption of its business for a considerable period of time, which in turn would have the effect of decreasing earnings and profits; that these factors would have a direct impact upon the personal fortunes of the plaintiffs and would cause a loss of money and profits to them, since they owned the land and were the owners of the majority of the stock in the corporation; and that the evidence offered should have been admitted, "not to enable the corporation to make a recovery, but solely to present fairly and actually the position that the [plaintiffs] were in and the considerations that would have borne upon them in becoming willing to sell." The plaintiffs maintain that the court erred in concluding that the referee did not commit error in excluding the evidence offered.

The plaintiffs concede that the corporation could not recover damages, even though it was required to move its business and to meet the expense of doing so. If the plaintiffs had been the owners of the business conducted upon their premises, it would have been the duty of the trier to consider the expense of moving the machinery to a new location in arriving at the fair market value of the land, not as a separate specific sum of money to be added to the value of the land but as evidence tending to prove its fair market value. *Harvey Textile Co.* v. *Hill,* 135 Conn. 686, 689, 67 A.2d 851. "[I]n

determining market values in awarding damages for land taken, it is proper to consider all of those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land; . . . unless, indeed, the considerations advanced are not a necessary, natural or proximate result of the taking." *Andrews* v. *Cox,* 127 Conn. 455, 458, 17 A.2d 507. "It is true that courts will disregard legal fictions, including that of a separate corporate entity, when they are used for fraudulent or illegal purposes. Unless something of the kind is proven, however, to do so is to act in opposition to the public policy of the state as expressed in legislation concerning the formation and regulation of corporations. The subject is fully discussed and implemented by a judicious selection from the innumerable authorities on the subject in *Hoffman Wall Paper Co., Inc.* v. *Hartford,* 114 Conn. 531, 534, 159 Atl. 346. . . . The *Hoffman* case holds that mere control through ownership of practically all of the shares of stock is not enough, in itself, to invoke the doctrine." *Kulukundis* v. *Dean Stores Holding Co.,* 132 Conn. 685, 689, 47 A.2d 183. The effect on the earnings or profits of the corporation of moving the business could not reasonably be held to be a necessary, natural or proximate result of the taking of the plaintiffs' land and so to affect its fair market value. Consequently, the referee did not err in excluding the evidence offered by the plaintiffs.

The plaintiffs maintain that the conclusion that the taking price of $44,300 was just, fair and reasonable could not legally and properly be drawn. They contend that the defendant was bound by the testimony of his expert, who testified that he had inspected the property and had concluded that the fair market value of the land and building was, as of the

date of condemnation, $50,103. The plaintiffs press this claim notwithstanding the fact that the witness testified that he was not a builder and had obtained the building costs from others and notwithstanding the further fact that there was other expert testimony to the effect that the fair market value of the property was less than $44,300. "Nothing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641. "A trier's . . . use of the testimony of a witness on some points does not preclude its rejection on others." Id., 162. The plaintiffs' claim that the conclusion that the taking price of $44,300 was just, fair and reasonable could not be legally and properly drawn is without merit.

There is no error.

In this opinion the other judges concurred.