JOEL L. SAPHIR ET AL. v. EGON NEUSTADT ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued November 14, 1978—decision released April 3, 1979

*Peter L. Truebner,* with whom were *Stewart M. Casper* and, on the brief, *James F. Sullivan,* for the appellants-appellees (plaintiffs).

*Richard Hanna,* for the appellees-appellants (defendants).

Longo, J. Pursuant to the provisions of § 52-105 of the General Statutes, the plaintiffs brought a class action seeking damages and equitable relief, claiming that the defendants, Egon Neustadt and Candle-

wood Lake Estates Service Corporation, failed to construct and maintain roads in a development owned by the defendant Neustadt, in accordance with the terms contained in deeds from Neustadt to the plaintiffs. The matter was referred to a state referee, who, acting as a judge of the Superior Court, found that the defendants had substantially complied with the obligations imposed by the deeds and denied equitable relief, but rendered judgment awarding damages to the plaintiffs for the defendants' misapplication of certain funds paid by the plaintiffs.[1]

## I

The trial court found[2] the following pertinent facts: In 1945, the defendant Egon Neustadt, hereinafter the defendant, acquired title to the area known as Candlewood Lake Estates located in the

[1] The plaintiffs have appealed from this judgment and the defendants have filed a cross appeal. In their appeal, the plaintiffs have limited their attack on the court's finding to the court's failure to find as admitted or undisputed a number of paragraphs contained in the plaintiffs' draft finding. We consider this issue in the text of this opinion, section II A, infra.

The defendants, on the other hand, in their cross appeal, have assigned error in relation to every paragraph of their draft finding; such a broadside attack has been unfailingly discountenanced by this court. *Arcari* v. *Dellaripa*, 164 Conn. 532, 534, 325 A.2d 280 (1973). Some of the paragraphs alleged not to be found by the court are implicit in the finding as made. Those portions of the draft finding which the defendants argue were improperly excluded are not "admitted or undisputed" facts, or are not material in that the result will not be affected by their inclusion; their addition to the finding would avail the defendants nothing. See Practice Book, 1978, § 3039; *Schomer* v. *Shilepsky*, 169 Conn. 186, 188 n.1, 363 A.2d 128 (1975); *Lewis* v. *Lewis*, 162 Conn. 476, 481, 294 A.2d 637 (1972). Those conclusions and rulings of the court which are necessary to the disposition of the defendants' appeal will be discussed in this opinion.

[2] The trial court rendered two separate findings, one in relation to the plaintiffs' appeal and one in relation to the defendants' cross appeal.

town of Sherman. Prior to the date of acquisition, his predecessor in title had commenced a rustic development with a few houses and narrow dirt roads. The general topography of the area is heavily wooded and mountainous with large rocks. ledges and steep slopes with no paved road. The development of the land continued until about 1969, during which time lots were sold, new roads were constructed and other roads were improved. The defendant designed the development for residential use as a resort area, for seasonal and recreational use. In so doing, he attempted to retain the character of the development and to make the narrowest roads consistent with zoning regulations thereby making as little change in the environment as possible.

Throughout the development of the area, the defendant used a fairly standard form of contract and deed, changing only slightly from time to time. A covenant, typical of the covenants contained in the deeds of all of the plaintiffs in this action, provided that the "[g]rantees [the plaintiffs] shall have the right to the use of road and beach at their own risk and without liability of grantors. Grantees covenant to pay to the grantors, their heirs and assigns, the sum of $25.00 on May 1st of each year in advance, *which sum shall be set aside in a road fund to be applied to the maintenance and construction of the roads;* and likewise the sum of $10.00 for beach maintenance; said payments to continue until such time as the roads and beach will have been taken over by a property owners association." (Emphasis added.) The court found that none of the funds collected by the defendant under the provisions of the deeds was ever used by him for the construction of new roads.

In 1966, the defendant conveyed all roads, beaches and open areas in the development to a corporation known as Candlewood Lake Estates Service Corporation, hereinafter CLESCO, and turned over all funds to the corporation. CLESCO's sole source of income was the receipts from the charges made by the development's residents. During the period from 1966 to 1973, inclusive, CLESCO received $96,466.24 from Candlewood property owners, and substantially all funds collected were expended during each year. The financial records indicate that expenditures were broken down into three categories: roads, beaches, and general. Under roads and beaches, all expenditures listed were expended each year for mechanical work and repairs on roads and beaches, such as patching and oiling. In 1974, the defendant, by letter to all the landowners, abandoned his responsibilities for road and beach maintenance.

As we have initially indicated, the trial court, although finding that the road conditions in Candlewood Lake Estates were not completely satisfactory, concluded that the defendants had substantially performed the obligations assumed by them pursuant to the covenant before mentioned in regard to the maintenance of the roads. The court, however, concluded that the defendant Neustadt had wrongfully used and misapplied the sum of $19,835.89 paid to him for road maintenance, and rendered judgment for the plaintiffs. The court instructed counsel for the plaintiffs to file an amendment to their complaint, after trial, to conform to the proof at trial. Thereafter, the defendants were given leave to plead to the plaintiffs' amended complaint, and on January 15, 1976, the defendants were given an opportunity to offer evidence limited to the amount of damages

awarded to the plaintiffs in the court's original judgment. In a supplemental judgment, filed March 10, 1976, the court opened and vacated its original judgment, and reduced the amount of the award to the plaintiffs for the defendants' misapplication of funds to $13,412. The court concluded further that the defendant Neustadt and the defendant CLESCO were alter egos, and, accordingly, rendered judgment against both defendants in favor of the plaintiffs. It is from this final judgment that the plaintiffs have appealed and the defendants have cross appealed.

## II

### The Plaintiffs' Appeal

#### A

In their initial assignments of error, the plaintiffs seek to correct the court's finding to include numerous material facts which they claim were admitted or undisputed, and they also claim that certain conclusions reached by the court were not supported by the facts found. They contend that of the 129 draft findings which they submitted and which addressed the failure of the defendants to maintain the Candlewood roads, the trial court included in its finding only eighteen references to road conditions, the majority of which made no reference to their unsafe or hazardous conditions. The plaintiffs argue that considerable evidence was presented by photographs, expert witnesses and residents to the effect that the roads were in poor condition, dangerous to travel and in need of repairs. The defendant Neustadt admitted on cross-examination that the roads were generally in bad repair. The plaintiffs contend that without the addition of these facts to the finding, this court is prevented from fully con-

sidering the merits of their argument concerning the alleged breach by the defendant Neustadt of the covenant to maintain the Candlewood roads.

We have examined the court's finding, and have concluded that the finding as made warrants no corrections. The plaintiffs submitted, via the 129 paragraphs of their draft finding, an extremely detailed description of sixteen roads in Candlewood Lake Estates, the structural deficiencies of the roads, the generally broken-down conditions of the roads and the cost of restoring the roads to an acceptable level of comfort and safety. The trial court found that an overflow of grass and shrubs had encroached on some of the roads causing visual disturbances to motor vehicle operators, that the end of Candlelight Road should be widened, that some of the roads were unpaved gravel, that a hazardous U-turn existed on Sunset Drive, that no guardrail existed on Skyline Drive, and that a steep grade existed thereon. In view of those findings, the court concluded that the road conditions in Candlewood Estates were not completely satisfactory, that numerous road surfaces were broken and rutted, and that storm water lay on the roads in various places.

This court may correct a finding which fails to include admitted or undisputed facts. *Morrone* v. *Jose,* 153 Conn. 275, 277, 216 A.2d 196 (1965). The trial court, however, is not required to state its finding in the identical language of an appellant's draft finding. *Walsh* v. *Turlick,* 164 Conn. 75, 77, 316 A.2d 759 (1972); *Blatt* v. *Star Paper Co.,* 160 Conn. 193, 201, 276 A.2d 786 (1970). We are satisfied that in the twenty-one paragraphs of the court's finding and its four paragraphs of conclusions, all dealing with the allegedly defective conditions of the roads,

the court sufficiently found the facts posited in the 129 paragraphs of the plaintiffs' draft finding. As those paragraphs of the draft finding are thus implicit in the finding as made, no useful purpose would be served by their addition to the finding. *Salvatore* v. *Milicki,* 163 Conn. 275, 277, 303 A.2d 734 (1972).

The plaintiffs also attack the court's conclusion that the defendants had substantially complied with their obligation under the covenant to keep and maintain the Candlewood roads in a reasonably safe condition. That conclusion is tested by the finding and must stand unless it is legally or logically inconsistent with the facts found or unless it involves the application of some erroneous rule of law material to the case. *Belford* v. *New Haven,* 170 Conn. 46, 55, 364 A.2d 194 (1975). Only in the clearest circumstances where the conclusion found could not reasonably be reached will the trier's determination be disturbed. *McLaughlin* v. *Chicken Delight, Inc.,* 164 Conn. 317, 323–24, 321 A.2d 456 (1973).

At the outset, we note that a covenant, by definition, obligates the parties to observe rights and duties in relation to the physical characteristics of the land to which the covenant attaches; the defendants' obligation to maintain the roads must thus be considered in relation to the physical topographical conditions in Candlewood Lake Estates. See 7 Thompson, Real Property, § 3150; 5 Powell, Real Property, § 673. Of particular importance in the court's reaching of the above conclusion is the fact that the state referee made, with the consent of counsel, a personal on site examination of all of the roads in the Candlewood Lake Estates. In view of the mountainous, steeply sloped and wooded topog-

raphy of the area, the court was in a position, following inspection, reasonably to conclude that the defendants had substantially complied with the duties to maintain the roads in the development in accordance with their commitment imposed by the covenant. Moreover, the court could reasonably conclude, having found that the area was recreational and *seasonal* in nature, that the defendants were obliged to maintain roads carrying seasonal traffic, and had met this obligation by constructing and maintaining the roads in the development.

Evidence obtained by the court upon an inspection of the premises was properly taken into account by the court in making the findings and conclusions we have previously referred to concerning the conditions of the roads, and in reaching its conclusion that the defendants had substantially performed their obligations. *Canepari* v. *Townshend,* 142 Conn. 477, 479, 115 A.2d 432 (1955); *Albright* v. *MacDonald,* 121 Conn. 88, 91, 183 A. 389 (1936); *Greenberg* v. *Waterbury,* 117 Conn. 67, 74, 167 A. 83 (1933); Maltbie, Conn. App. Proc. (2d Ed.) § 149; see Practice Book, 1978, § 3029. This inspection furnished evidence as truly as though similar information had been presented by the lips of witnesses; *Heublein, Inc.* v. *Street Commissioners,* 109 Conn. 212, 218, 146 A. 20 (1929); Maltbie, op. cit., § 74; and from that inspection, the trial court could reasonably base findings and, from those findings, reach conclusions as to the conditions of the roads. Cf. *Shaughnessy* v. *Morrison,* 116 Conn. 661, 664, 165 A. 553 (1933); *Ruerat* v. *Stevens,* 113 Conn. 333, 338, 155 A. 219 (1931). We cannot say that the court's conclusion, which is entitled to great weight on appeal, is not supported by the facts found when the fact that the referee visited the premises is also

taken into consideration, as it must be. *West Hill
Construction Corporation* v. *Horwath,* 149 Conn.
608, 612, 182 A.2d 919 (1962); *Tide Water Oil Sales
Corporation* v. *Shimelman,* 114 Conn. 182, 184,
158 A. 229 (1932); annot., 97 A.L.R. 335, 337–38;
76 Am. Jur. 2d, Trials § 1247. We find no error
in that conclusion.[3]

B

The plaintiffs next assign error in the court's
refusal, on the grounds of relevancy and hearsay,
to admit into evidence the certified minutes of the
town of Sherman planning and zoning commission
relating to the commission's denial of the defendant
Neustadt's prior applications for building permits
for certain lots in the Candlewood development due
to substandard and hazardous conditions of the
roads. The plaintiffs contend that the records in
question constituted a running commentary on the
unsatisfactory conditions of the roads from 1963
to the time of trial, and argue that they were preju-
diced in their efforts to show a breach of the defend-
ant's duties to maintain the Candlewood roads. We
do not agree. On the matter of admissibility, it

---

[3] In their brief, the plaintiffs make the argument that, as part of
the defendants' obligation to maintain the roads, the defendants were
required to assume the sole obligation for the road upkeep, and that
if the funds acquired from the plaintiffs were insufficient to main-
tain the roads, the defendants were required to expend additional
funds for road maintenance. As the trial court made conclusions
accepting those arguments of the plaintiffs, we find it odd that the
plaintiffs have briefed those arguments on appeal.

In any event, our holding that the trial court did not err in con-
cluding that the defendants had substantially complied with their
obligations under the covenant, while disposing of the issue of the
defendants' obligations, leaves intact the trial court's conclusion
that the defendants were required to spend sums of their own if the
sums collected from the plaintiffs by way of assessments were insuffi-
cient to maintain the roads.

rests in the discretion of the court to determine whether the evidence offered conduces in any reasonable degree to the establishment of the probability or improbability of the fact in issue. *Pitt* v. *Kent,* 149 Conn. 351, 357, 179 A.2d 626 (1962) ; see *Console* v. *Nickou,* 156 Conn. 268, 275, 240 A.2d 895 (1968); *Plumb* v. *Curtis,* 66 Conn. 154, 166, 33 A. 998 (1895). The fact in issue here was whether the defendant had reasonably performed his contractual obligation to construct and maintain the roads in Candlewood Estates to the time of trial. An examination of the dates of the minutes printed in the appendix to the plaintiffs' brief discloses that the minutes primarily related to action taken by the commission from 1963 to 1965. Some of the proffered documents related to parking problems not relevant to the facts concerning the defendants' obligation under the covenant. Although one of the documents indicates that the commission believed that the conditions in the development were unacceptable, that document is dated August 15, 1964. There is no indication in the record that at the time of the filing of this suit in January, 1971, or at the time of the filing of the amended complaint in January, 1975, the zoning commission was of the same opinion as it was in 1964.

The plaintiffs have the burden of showing that the court's ruling excluding the evidence on the ground of irrelevancy was both wrong and harmful. *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 21, 118 A.2d 798 (1955) ; *Senderoff* v. *Senderoff,* 133 Conn. 300, 303, 50 A.2d 422 (1946) ; Maltbie, Conn. App. Proc. § 13. If the ruling could not have affected the court's judgment, it is not harmful. *Anonymous* v. *Norton,* 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46

L. Ed. 2d 268 (1975); *Guerrieri* v. *Merrick*, 145 Conn. 432, 435, 143 A.2d 644 (1958). The determination of that question lies in the record. *Murray* v. *Gagliardi*, 105 Conn. 392, 394, 135 A. 293 (1926). In light of those principles, the ruling was harmless. Our review of the record indicates that the referee could reasonably have concluded that the proffered evidence, primarily relating to conditions in the development in 1963-1965, was not relevant to the conditions therein at the time of trial. Moreover, in view of the referee's on site inspection of the conditions in Candlewood Estates, as of the time of trial, the admission of the proffered evidence almost certainly would not have affected his judgment on the defendants' substantial compliance with their obligations under the covenant. See *Norwich Roman Catholic Diocesan Corporation* v. *Southern New England Contracting Co.*, 164 Conn. 472, 478, 325 A.2d 274 (1973). There was no error in the court's ruling, and, in sum, we find no error on the plaintiffs' appeal.

III

The Defendants' Cross Appeal

A

On their cross appeal, the defendants first argue that expenditures made by the defendants CLESCO and Neustadt and disallowed as improper by the trial court were in fact authorized expenditures. The trial court found that under general expenditures CLESCO spent $19,846.40. Of this amount $13,412 was found to have been wrongfully misapplied to cover expenditures in the amount of $11,260.82 to the defendant Neustadt as reimbursement for office expenses he incurred on behalf of

CLESCO, the balance having been paid for miscellaneous items including real estate taxes, legal fees, state fees, insurance, fire department contributions, signs, a mailbox and a guardhouse. The court rendered judgment for the plaintiffs against both CLESCO and Neustadt.[4] The issue presented is whether the covenant, stating that funds received from the plaintiff-property owners "shall be applied to the maintenance . . . of the roads" authorized the defendants to expend part of those funds for purposes not strictly related to the maintenance of the roads. We find that the trial court did not err in concluding that the covenant did not authorize such expenditures.

The defendants argue that all of the above expenses fall into the general category of overhead expenses and are a part of the "maintenance" of the roads, urging that we construe the word "maintenance" broadly to encompass all of the above expenditures. The word "maintenance," however, has no precise legal significance; its meaning varies with the purpose to be accomplished. Compare *Davis Holding Corporation* v. *Wilcox,* 112 Conn. 543, 547, 153 A. 169 (1931), with *Faraday* v. *Dube,* 175 Conn. 438, 399 A.2d 1262 (1978). We agree with the plaintiffs that the term must be construed in light of the intention of the parties, which is to be determined from the language used, the circumstances, the motives of the parties and the purposes they sought to accomplish. *Klein* v. *Chatfield,* 166 Conn. 76, 80, 347 A.2d 58 (1974); *Henriques* v. *Rockefeller,* 148 Conn. 654, 658, 173 A.2d 596 (1961); see *Swayze* v. *Swayze,* 176 Conn. 323, 408 A.2d 1

---

[4] The defendants also assign error in the court's conclusion that CLESCO and Neustadt were alter egos. See discussion, infra, section III C.

(1978). We add, however, that a covenant containing language of doubtful or uncertain meaning is to be construed in the sense in which it is most probably understood by the person to whom it is addressed; or, expressed differently, the terms are to be construed most strongly against the party using them, in this case the defendant Neustadt. *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 376, 321 A.2d 444 (1973); 20 Am. Jur. 2d, Covenants, Conditions and Restrictions § 6. Moreover, the meaning of language in restrictive covenants is to be narrowly construed and is not to be extended by implication. *Rossini* v. *Freeman,* 136 Conn. 321, 323, 71 A.2d 98 (1949); *Hooker* v. *Alexander,* 129 Conn. 433, 436, 29 A.2d 308 (1942).

The court found that neither the deeds, contracts of purchase nor the defendants' offering statements mentioned the fact that part of the funds collected would be used for CLESCO's office expenses, and that at no time were the plaintiffs ever informed that some of the funds collected for road and beach maintenance would be used to defray office and administrative expenses. The court found further that most of the funds found to have been misapplied by the defendants were paid to Neustadt as reimbursement for amounts he paid for expenses in connection with collection work on delinquent accounts owed to CLESCO by the plaintiffs.

Implicit in the court's findings and conclusions is a restrictive definition of the word "maintenance" in the covenant contained in the plaintiffs' deeds, one that would limit permissible use of the "road fund" to the physical upkeep of the road, excluding use of the funds for administrative or managerial expenses. This construction of "maintenance" is

both consistent with meanings given to similar covenants relating to road maintenance, and with the parties' intentions concerning the payments made by the plaintiffs. "Maintenance" in relation to property has been defined as "the upkeep or preservation of the condition of property"; Black's Law Dictionary; and "making repairs and otherwise keeping premises . . . in good condition." Ballentine's Law Dictionary. It connotes a state of physical repair, upkeep, and preservation. *Frye* v. *Angst,* 28 Wis. 2d 575, 582, 137 N.W.2d 430 (1965) ; 54 C.J.S., Maintenance, p. 905. It does not, in common parlance, encompass the expenditure of funds for the administrative or managerial purposes of a corporation. If the covenant here in question had been intended to authorize expenditures other than those related to the physical upkeep and repair of the roads, it could easily have so stated. See *Neptune Park Assn.* v. *Steinberg,* 138 Conn. 357, 361, 84 A.2d 687 (1951). The court found that approximately $11,000 of the $13,412 wrongfully misapplied had been used by Neustadt to underwrite the cost of collection work by CLESCO and Neustadt. This expenditure, of course, had nothing to do with the physical upkeep or repair of the roads. The court could have concluded that the plaintiffs never envisioned such a use of the "road fund," and never intended that it be used in this manner. In view of the evidence before the court, indicating that the roads were in constant need of repair and that the plaintiffs paid the defendants monies solely to alleviate that problem, we cannot say that the court erred in concluding that Neustadt impliedly covenanted with the plaintiffs to use the road fund solely for the physical upkeep of the roads, and not for general administrative expenses.

## B

The defendants next claim that the trial court erred in allowing the plaintiffs, after the trial and initial judgment, to amend their complaint to conform to the proof at trial on the ground that this amended complaint alleged a new cause of action. In this connection, they argue further that the judgment, covering amounts wrongfully spent during the years 1966 to 1973, was improper in that the court erroneously allowed the amended complaint to relate back to the date of the filing of the plaintiffs' original complaint in 1971. Without such relation back, the defendants argue that the statute of limitations, General Statutes § 52-576, would bar any claim based on actions of the defendants prior to six years before August, 1975, the date of the postjudgment amended complaint. These claims are without merit.

As to the defendants' argument that the amendment was improper, we note that a trial court may allow, in its discretion, an amendment to pleadings before, during, or, as here, after trial to conform to the proof. *Wright* v. *Coe & Anderson, Inc.,* 156 Conn. 145, 155, 239 A.2d 493 (1968); *Thibault* v. *Frechette,* 135 Conn. 170, 173, 62 A.2d 863 (1948); cf. *Winsor* v. *Hawkins,* 130 Conn. 669, 670, 37 A.2d 222 (1944); General Statutes § 52-130; Practice Book, 1963, §§ 132, 134; Maltbie, Conn. App. Proc. §§ 33, 62–64. Such a ruling can be reversed only on a clear showing of abuse of discretion. Practice Book, 1963, § 132; *Antonofsky* v. *Goldberg,* 144 Conn. 594, 597, 136 A.2d 338 (1957). We find no abuse of discretion in the court's action, and, thus, the court did not err in allowing the amendment.

As to the defendants' argument concerning the relation back of the amendment and the statute of limitations, it is well settled that amendments to a complaint, unless they allege a new cause of action, relate back to the date of the complaint. *Keenan* v. *Yale New Haven Hospital,* 167 Conn. 284, 285, 355 A.2d 253 (1974); *Baker* v. *Baker,* 166 Conn. 476, 486, 352 A.2d 277 (1974); *Kelsall* v. *Kelsall,* 139 Conn. 163, 165, 90 A.2d 878 (1952). The issue, therefore, is whether the amended complaint, filed after trial, alleged a new "cause of action." We hold that it did not. "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. [Citations omitted.] 'A right of action at law arises from the existence of a primary right in the plaintiff, and in invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action.' *Pavelka* v. *St. Albert Society,* 82 Conn. 146, 147, 72 A. 725." *Gallo* v. *G. Fox & Co.,* 148 Conn. 327, 330, 170 A.2d 724 (1961); see *Keenan* v. *Yale New Haven Hospital,* supra; *Veits* v. *Hartford,* 134 Conn. 428, 434, 58 A.2d 389 (1948). Here, the "single group of facts" contained in the plaintiffs' complaint alleged a complete delict by the defendants of the duties imposed by the covenant, and the complaint sought an accounting of the monies paid pursuant to that covenant. By allowing the amendment, the trial court properly permitted the plaintiffs to expand or amplify what had already been alleged in support of their cause of action. See *Gallo* v. *G. Fox & Co.,* supra. The damages awarded by the court were of such a nature that they were in general within the allegations of the complaint, and

the allowance of damages for misappropriation of funds by the defendants did not constitute a departure from those allegations in a "matter essential to the charge or claim" which would render the judgment awarding them invalid. *Frosch* v. *Sears, Roebuck & Co.,* 124 Conn. 300, 303, 199 A. 646 (1938).

Moreover, where, as here, there is a variance between allegations in the complaint and the proof at trial, which is corrected by amendment to the complaint, a judgment based on the amended complaint will not be set aside unless the variance misled or prejudiced the defendants on the merits of the case. *Antonofsky* v. *Goldberg,* supra, 599; *Reciprocal Exchange* v. *Altherm, Inc.,* 142 Conn. 545, 552, 115 A.2d 460 (1955); Practice Book, 1963, § 134. The facts on which the plaintiffs relied in proving the defendants' misappropriation of funds had been received through the testimony of the defendant Neustadt. Moreover, the court opened the original judgment and gave the defendants the opportunity to plead to the amended complaint and to offer evidence on the amount of damages. The new evidence resulted in a *reduction* of the damages originally awarded to the plaintiffs. In view of that, we cannot say that the defendants were prejudiced in maintaining their defense on the merits, or that they were surprised by the plaintiffs' proof, or that they were misled by the allegations in the amended complaint. For these reasons, the variance was not material, and the court's judgment was correct. *Strimiska* v. *Yates,* 158 Conn. 179, 184, 257 A.2d 814 (1969); *Schaller* v. *Roadside Inn, Inc.,* 154 Conn. 61, 64, 221 A.2d 263 (1966).

In sum, we hold that the amended complaint, arising from the same single group of facts as the initial complaint, properly related back to it, that

the claims therein were thus not barred by the statute of limitations, and that the court's judgment was proper.

### C

We turn finally to the defendants' claim that the court erred in concluding that CLESCO and Neustadt were alter egos and that, therefore, both defendants were liable in damages to the plaintiffs. Generally, a corporation is a distinct legal entity and the stockholders are not personally liable for the acts and obligations of the corporation. 18 Am. Jur. 2d, Corporations § 13; 19 Am. Jur. 2d, op. cit. § 713. Courts will, however, disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor. 1 Fletcher, Corporations (Perm. Ed. 1963 Rev.) § 43; Ballantine, Corporations (Rev. Ed.) § 136; 18 Am. Jur. 2d, Corporations § 14; see *Vogel* v. *New Milford,* 161 Conn. 490, 494, 290 A.2d 231 (1971); *Tishman Equipment Leasing, Inc.* v. *Levin,* 152 Conn. 23, 28, 202 A.2d 504 (1964); *Humphrey* v. *Argraves,* 145 Conn. 350, 354, 143 A.2d 432 (1958); *Hoffman Wallpaper Co.* v. *Hartford,* 114 Conn. 531, 535, 159 A. 346 (1932). We have affirmed judgments disregarding the corporate entity and imposing individual stockholder liability when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock. See *Zaist* v. *Olson,* 154 Conn. 563, 573, 227 A.2d 552 (1967).

In *Zaist,* we found the controlling stockholder and a related corporation liable under an "alter ego" theory, concluding that the corporate structure of

the defendant in that case could properly have been disregarded under *either* the "instrumentality" rule or the "identity" rule. *Zaist* v. *Olson,* supra, 578. Similarly, we have concluded that the defendant Neustadt could properly have been held liable, and the corporate structure of CLESCO disregarded, under either theory.

"The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory *or other positive legal duty,* or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." (Emphasis added.) *Zaist* v. *Olson,* supra, 575. The identity rule, on the other hand, has been expressed as follows: "If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." Id, 576.

The record before us reasonably supports a conclusion that CLESCO was a corporation in name only and that it was operated as the instrumentality

or alter ego of Neustadt, subject to the sole control of Neustadt; as such, CLESCO's activity was not indicative of corporate activity, but was symptomatic of the business operations of an individual. See, generally, 46 A.L.R.3d 428, 431. The court found that Neustadt was the sole shareholder of CLESCO, that he was the president of CLESCO, that Neustadt held the only proprietary interest in CLESCO, that no minutes were kept of the meetings of CLESCO's directors, that no records of annual elections of CLESCO existed, that other officers of CLESCO existed solely to accommodate Neustadt, that Neustadt solely directed CLESCO's affairs, that only Neustadt could deal with corporate funds, and that CLESCO had never filed a corporate business tax return. In view of those facts the court could reasonably conclude that Neustadt completely dominated the corporation to the point where CLESCO had no separate existence, and that such control was used for the purpose of diverting Neustadt's "positive legal duty"; *Zaist* v. *Olson,* supra; imposed by deeds signed solely by Neustadt, to construct and maintain the roads in the development. Moreover, the court could conclude that there existed a unity of interest and ownership between CLESCO and Neustadt such that the purposes of justice would be served by disregarding the shield of CLESCO's corporate structure. In sum, we find no error in the court's conclusions imposing liability on CLESCO and Neustadt individually. See *House of Koskot Development Corporation* v. *American Line Cosmetics, Inc.,* 468 F.2d 64, 66–67 (5th Cir. 1972); *Segan Construction Corporation* v. *Nor-West Builders, Inc.,* 274 F. Sup. 691, 698–99 (D. Conn. 1967); *Plank* v. *Arban,* 241 So. 2d 198, 200 (Fla. App. 1970).

We add one caveat. We do not wish to be understood to countenance, by anything we have said here, the imposition of the legitimate indebtedness of a corporation upon a majority stockholder in derogation of his legal immunity merely because of the corporate control inherent in his stock ownership. To do so would be to act in opposition to the public policy of this state as expressed in legislation concerning the formulation and regulation of corporations. See *Zaist* v. *Olson,* supra, 581 (*Cotter, J.,* dissenting). The present case, however, presents a set of circumstances far different from mere majority control of a corporation by a sole stockholder. We decide cases on the record before us; and, on that record, we have no difficulty sustaining the conclusions of the trial court as to the personal liability of the defendant Neustadt.

There is no error on the defendants' cross appeal.

There is no error.

In this opinion the other judges concurred.