[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case, the plaintiffs are Michael Schiavone and his related corporation, Michael Schiavone Sons, Inc. The defendants are Lindy Lee Gold and her related corporation, Lindy Lee Corporation. At the close of evidence in the trial, Lindy Lee Corporation having been dissolved and now without funds confessed judgment so that now the question to be resolved is whether Lindy Lee Gold individually can be held liable for the plaintiffs' claims. CT Page 7376
The plaintiffs' revised complaint originally contained four counts. Only the last count is directed to the individual defendant. In describing its allegations, the following references will be used for the parties: Michael Schiavone and Michael Schiavone Sons, Inc. will be referred to as the plaintiffs; Lindy Lee Gold will be described as Gold and Lindy Lee Corporation will have the initials L.L.C.
In the fourth count, the plaintiffs allege the following has occurred: that L.L.C. and its predecessor Shure Tours, Inc. provided travel services for which the plaintiffs were clients; that on May 17, 1990 when L.L.C. filed a certificate of dissolution, the plaintiffs had a credit balance of $12,526.44; that notice of the dissolution was not given to the plaintiffs; that, thereafter, an accounting of the credit balance was not forthcoming despite the plaintiffs' requests; that Gold was the principal shareholder and has been the officer and director of L.L.C. in charge of the daily operation of the corporation and exercising complete domination and control over it so that L.L.C. was only Gold's alter ego or instrumentality; that the plaintiffs were at all times entitled to be informed of the debit or credit balance in their account and Gold's failure to render an accounting despite the plaintiffs' requests was an unjust act in contravention of plaintiffs' legal rights; that Gold voted for a distribution of the assets of L.L.C. pursuant to Gen. Stat. § 33-316; that Gold is liable to the plaintiffs for the obligations of L.L.C. pursuant to Gen. Stat. § 33-321 (b)[1]
The defendants, in addition to general denials, assert five special defenses of which the last four could be considered as applicable to Gold, namely: that the plaintiffs' equitable claims are barred by laches; that the plaintiffs have failed to state a cause of action upon which relief may be granted; that there was a lack of consideration for the express or implied agreements [for accountings] alleged by the plaintiffs; and that in accord with Gen. Stat. § 33-313 (d),[2] Gold was entitled to rely and did rely upon financial information, statements and reports prepared by an employee of L.L.C. and the defendants' accountant.
 I.
From the evidence presented at the trial including reasonable inferences derived therefrom, the following facts were established. The plaintiff Michael Schiavone is an officer of and principal in the plaintiff Michael Schiavone, Inc., a corporation that maintains CT Page 7377 offices in this country and in Europe. Michael Schiavone and the defendant Lindy Lee Gold had been friends enjoying a social and business relationship. At the trial, he stated that the friendship was of forty years duration and she described him as "my dear friend." Businesswise, at least, Michael Schiavone and his corporation did business with Shure Tours, Inc., a travel agency in which Gold was the manager and a substantial sale shareholder.
The plaintiffs maintained an open account with Shure Tours, Inc. Many times, there would be credits in the account if travel plans charged. When the credit balance became sufficiently large, the plaintiffs would use it to pay for a trip. At Shure Tours, Inc., the plaintiffs did business principally with Ruth Levin one of the travel agents, described by Gold as having retired leaving questionable accounts and records. All of the plaintiffs' payments, however, were made by check and easily traced. Gold personally handled what she described as "the bigger aspects of the Schiavone account."
In the early part of 1990, Shure Tours was being operated at a loss and its assets were sold to Milford Travel, Inc. for $75,000.00. As part of the transaction, Milford Travel hired Gold. On the date when the assets of Shure Tours were sold, the credit balance in the plaintiffs' travel account was $12,526.44. Michael Schiavone knew that he and his corporation were owed money but he did not know how much. The plaintiffs had continued to use Gold as a travel agent while she was working for Milford Travel. She said she would look into how much was owed.
On January 8, 1991, Gold wrote to the plaintiff Michael Schiavone claiming she was "absolutely astounded" by statements from his then attorney that some $12,000.00 was the amount owed. After reminding Michael Schiavone that his financial dealings had been exclusively with Rita Levin, Gold stated that to the best of her knowledge the amount owed was only $1300.00. The letter closed with Gold's request to be notified of what sum Schiavone's figures showed and when this money was delivered to Ruth Levin.
Rosalyn Gorenstein was the bookkeeper at Shure Tours, Inc. until May 1990, when the business closed. She prepared for Gold's accountants, Bailey Moore, Schaefer Glazer, a list of customers, as of March 31, 1990, with their respective debit and credit balances. The largest credit balance was listed as "Schiavone, Michael $12,526.44" followed by "Yancey Minerals $3,146.94." Gold and her bookkeeper, met with Marion DeLouise from the accounting CT Page 7378 firm on a quarterly basis. At the meeting on May, 1990, the list that Gorenstein had prepared was reviewed. Gold did not correct any account and in speaking with Marion DeLouise verified the amount owed to the plaintiffs. Marion DeLouise wrote on the list "all O.K. per Lindy 5/9/90.
Attorney Mark Sklarz represented Gold and Shure Tours, Inc. at the closing with Milford Travel. He also represented the defendant Lindy Lee Corporation (L.L.C.), the successor to Shure Tours, Inc. in which Gold testified that she owned 100% of the stock. Attorney Sklarz had been given a list of business creditors of Shure Tours and he negotiated settlements of some business debts with money received from the closing. He was not given a list of clients, however, who technically might be classified as accounts receivable but who were creditors because of credit balances on their accounts. He became aware of the plaintiffs' claim in January, 1991 from Gold's letter to Michael Schiavone.
On April 19, 1990, a date after the closing, Attorney Sklarz wrote to Gold. His letter was accompanied by a closing statement, a check in the amount of $7,259.80 payable to the Bank of New Haven representing the payoff figure for the Mercedes automobile belonging the Shure Tours, Inc. which Gold had transferred to herself and a check for $11,694.62 representing the balance of the proceeds due Shure Tours, Inc. from the closing. The difference between the sale price of $75,000.00 and the amount received by Gold on behalf of Shure Tours was used to pay closing costs and expenses, bank loans, other creditors, lawyers and Lawrence Liebman who received $7,500.00. Liebman was the other shareholder in Shure Tours, Inc. In his letter, Attorney Sklarz reminded Gold that it was imperative she make certain that all creditors of Shure Tours, Inc. were satisfied to prevent them from attempting to collect from Milford Travel, Inc.[3]
On April 25, 1990, a resolution for the dissolution and liquidation of L.L.C.[4] was signed by Gold in her capacity as sole director and shareholder of the corporation. Paragraph 2 of the resolution reads "The officers are authorized and directed to proceed promptly to collect and reduce to possession any of its assets to pay or provide for its liabilities and to distribute any remaining assets, subject to all remaining liabilities, to the shareholders in proportion to the number of shares owned by them in cancellation of their shares." The closeness of the relationship between Shure Tours, Inc. and L.L.C. is demonstrated by "Defendants' Amended Answers To Supplemental Interrogatories."[5]
CT Page 7379 In response to the question "If there was a distribution of assets to the shareholders pursuant to the corporate resolution dated April 25, 1990, please state the amount of the distribution payable to each of the shareholders," Gold reported "Lawrence M. Liebman — $7,500.00 Lindy Lee Gold — Mercedes Benz automobile represented by payoff to Bank of New Haven in the amount of $7,259.80." Neither plaintiff was ever given notice of a liquidation of Shure Tours, Inc. or of L.L.C.
When final tax returns were being prepared for Shure Tours, Inc. Marion DeLouise understood that Gold was going to settle accounts and that the matter of the plaintiffs' credit would be either settled or forgiven. Based upon her understanding and pursuant to authority given to her by Edwin Schaefer, her boss or by Gold, she closed out all of Shure Tours' accounts receivable, including the plaintiffs' credit, and reported them as commission income of Shure Tours, Inc. which was in a loss situation. On her balance sheet prepared on April 1, 1991, Marion DeLouise had written concerning the plaintiffs' credit "will settle hopefully 1300."
Some creditors were paid in full by Gold personally. Among them was Yancey Minerals, the client who, next to the plaintiffs, had the largest credit balance.
 II.
In order to hold Gold liable when the plaintiffs' credit is admittedly owed by Shure Tours, Inc. and its successor L.L.C., the plaintiffs must convince the court to pierce the corporate veil. Whether or not such should be done presents an issue of fact and involves a concept that is equitable in nature. Angelo Tomasso v.Armor Construction Paving Inc., 187 Conn. 544, 555-56 (1982). The plaintiffs suggest that piercing of the corporate veil is warranted through a proper application of the so-called "instrumentality rule."
Our Supreme Court has consistently held that in any situation other than one of express agency, the instrumentality rule requires proof of three elements. First, there must be control, not mere majority or even complete stock control, but control in terms of complete domination, not only if finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to the transaction at issue had at the time no separate mind, will or existence of its own. Second, the CT Page 7380 individual must have used such control to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty or a dishonest or unjust act contrary to the plaintiffs' legal rights. Third, the control and breach of duty must be the proximate cause of the injury or unjust loss of which complaint is made. Compisano v. Nardi, 212 Conn. 282, 291-92 91989); AngeloTomasso Inc. v. Armor Construction Paving Inc. supra at 554.
Also, there is another rule, known as the identity rule, which may serve as a means of imposing liability on an individual for corporate wrongs. The identity rule applies if the plaintiff can show that there was such a unity of interest and ownership that the independence of L.L.C. had in effect ceased or had never begun and an adherence to the fiction of a separate corporate identity would serve only to defeat justice and equity by permitting the individual to escape liability arising out of a corporate act performed for the individual's benefit. Saphir v. Neustadt,177 Conn. 191, 210 (1979); Zaist v. Olson, 154 Conn. 563, 576 (1967).
Taking the instrumentality rule first; an analysis of the facts that have been found in the light of the three elements leads to the conclusion that the requirements for this rule have indeed been satisfied. With reference to Shure Tours, Inc., Gold was not the only shareholder but she certainly was the dominant one. The bookkeeper, accountant and attorney all looked to her for decisions. She testified that she was the managing shareholder and the court finds such to be so. The record is devoid of any participation in the travel business by Lawrence Liebman the other shareholder. When L.L.C. was formed as Shure Tour's successor, Gold became the sole shareholder and director. By her admissions, however, distributions were made from L.L.C. to Liebman ($7,500.00) and to herself ($7,259.80, payment for the Mercedes). The distributions to Liebman and Gold amounted to a violation of a positive legal duty owed to the plaintiff creditor in that they were contrary to item 2 of the resolution of dissolution and liquidation of L.L.C., a document signed by Gold, that provided for payments to creditors before distributions were made to shareholders. Said distributions also contravened and thwarted the provisions of § 33-379 (d) for the presentment of creditor's claims in the wind up procedure; the stated object of the resolution. The distributions were the proximate cause of unjust loss to the plaintiffs in that they left Shure Tours, Inc. and L.L.C. without means to pay creditors.
Unlike the instrumentality rule with its three specific CT Page 7381 elements, the identity rule is undifferentiated. Angelo Tomasso,Inc. v. Armor Construction Paving, Inc. supra at 575 (Borden, J. dissenting). Differences in structure, however, do not mean that, in application, the two rules cannot reach the same result. InSaphir v. Neustadt, supra at 210 and Zaist v. Olson, supra at 578, defendants were held liable under both the instrumentality and the identity rules. The court reaches the same conclusion here. Shure Tours, Inc. sold its assets in the first quarter of 1990 and Gold, its managing shareholder testified that she used the net proceeds of the sale to pay creditors. L.L.C., was formed as the successor of Shure Tours with Gold as its sole shareholder and director. A resolution for the dissolution of L.L.C. was adopted on April 25, 1990. In answers to the plaintiffs' interrogatories, Gold admits that pursuant to this resolution, she and her fellow shareholder in Shure tours, not in L.L.C. received distributions. Needless to say, in the sale of all of Shure Tour's assets to Milford Travel, Inc. there was no compliance with the then existing bulk transfer act. From all of this, the court concludes that L.L.C. was only the alter ego of Gold and that the unity of interest and ownership was such that the independence of L.L.C. had never begun. If Shure Tours, as differentiated from Gold, ever had an independent existence, the court concludes that it ceased after its assets were sold and Gold was paying selected creditors.
 III.
The plaintiffs' contention that an alternate route to recovery is provided by § 33-321 (b) is predicated upon a misconception of the scope of that statute. Although enforceable by a creditor, § 33-321 (b) is concerned with the liability of a director to the corporation in certain instances. Likewise Gold's reliance upon § 33-313 (d) as entitling her to a special defense because she claims to have relied upon her bookkeeper or her accountant rests upon a similar misconception. Section 33-313 (d) is a codification of the business judgment rule" adherence to which, at times by relying upon opinions expressed by accountants or corporate employees, will absolve the director from liability to the corporation or to shareholders in a derivative action. Rosenfield v. Metals SellingCorp., 229 Conn. 771, 784-89 nn. 15, 16 (1994); see also Joy v.North, 692 F.2d 880, 884-86 (2d Cir. 1982) (interpreting Connecticut law), cert. denied sub nom. Citytrust v. Joy, 460 U.S. 1051,103 S.Ct. 1498; 75 L.Ed.2d 930 (1983).
IV. CT Page 7382
Gold's remaining special defenses have not been briefed. Some comment, however, is directed to them. Whether laches exist is a question of fact. Dunham v. Dunham, 204 Conn. 303, 327 (1987). In this case, the court concludes that laches are not present. Delay in bringing suit alone does not establish laches, the delay must be unduly prejudicial. Cummings v. Tripp, 204 Conn. 67, 88 (1987). In any event, the burden was on Gold, as the party alleging laches to establish that defense. Id.
From what has been written, the court quite obviously is of the opinion that the plaintiffs revised complaint does state a cause of action upon which relief may be granted. The special defense of a lack of consideration in this action that basically is one of "book debt" is regarded as frivolous.
 V.
Through the operation of the instrumentality rule and the identity rule, Gold is responsible for the debt that Lindy Lee Corporation (L.L.C.), as successor to Shure Tours, Inc. owes to the plaintiffs. Judgment is rendered in favor of the plaintiffs against Lindy Lee Gold individually for the sum of $12,526.44 plus taxable costs. Prejudgment interest being discretionary with the court, Buell v. American Universal Ins. Co., 224 Conn. 758, 766
(1993)j is not awarded although it has been specifically requested by the plaintiffs.
Jerrold H. Barnett, Judge