[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff hereinafter (Toshiba) commenced this action in 1994 against Mobile Medical Systems, Inc., hereinafter (Mobile) and Paul Petonito (Petonito). On October 4, 1996, Toshiba filed the now operative Amended Complaint in which it claimed money damages; punitive damages and attorney's fees pursuant to CUTPA § 42-110g(a); and treble damages pursuant to Connecticut General Statutes § 52-564. A default for failure to plead at the time of trial was entered by the court against the defendant corporation Mobile, and the matter proceeded against Mobile as a hearing in damages. The evidence produced as to actual damages is in the amount of $425,566.88.
The Amended Complaint alleges four counts of Breach of Contract by Mobile and Paul Petonito, individually, president, as sole owner of Mobile. The complaint in the Fifth Count alleges that the defendants wrongfully took the property of Toshiba seeking treble damages pursuant to Conn. Gen. Stat. § 52-564.
The Sixth Count seeks damages under CUTPA: Conn. Gen. Stat. § 42-110, et seq.
Section 52-564 concerns the theft of goods. The plaintiff failed to establish a wrongful taking of any property. Accordingly, judgment may enter in favor of defendants as to the Fifth Count. CT Page 10420
The Sixth Count making claim under CUTPA likewise fails because the alleged Breach of Contract for nonpayment of goods received does not rise to the level of any deceptive, unethical or immoral acts on the part of the defendants. Accordingly, judgment is entered in favor of the defendants on the Sixth Count.
Toshiba is engaged in the business of distributing and selling nuclear diagnostic imaging equipment. Counts One through Four of the Amended Complaint essentially allege that Mobile breached its contracts with Toshiba and that Paul Petonito is personally liable for the debt of his corporation, Mobile.
The plaintiff seeks to pierce the corporate veil. Mobile denies that Petonito completely dominated the finances and policies of Mobile such that the unity of interest between him and Mobile resulted in Mobile not being a separate entity nor did he use his control and domination to commit unjust acts against the plaintiff under its contractual obligations by Mobile.
The facts adduced at trial are as follows: Mobile operated its corporation from the same premises as another corporation owned by Petonito, A-K Machine Company (A-K) that was engaged in the sale of medical vans. Petonito testified that the purpose for formation of Mobile was that he wanted doctors to know that Mobile Medical Systems was a medically oriented company. The original capitalization of Mobile was $100.00 (Exhibit P) Petonito did not provide for payment for his initial stock. Petonito owned 100 percent of the stock and made all corporate decisions. Mobile had no corporate assets beyond a Cadillac automobile given to or used solely by Petonito. The corporation held no meetings, had no lease arrangement for the rental of the premises. The corporation did not file any tax returns or other documentary proof with the Secretary of State as to its corporate existence. Petonito, notwithstanding a subpoena to produce the records of his corporation, failed to do so at trial. Mobile had only a shared employee, bookkeeper Patricia Ivarone, an employee of A-K. Patricia Ivarone did not receive any compensation and wrote checks at the direction of Petonito. The court concludes from all the evidence as to the separate identity of Mobile, it was nothing more than a shell for Petonito. The court rejects the argument of Petonito that the corporation was established for an appropriate purpose in order to deal with the medical profession. CT Page 10421
Toshiba produced exhibits demonstrating that Petonito drew down at least $87,123.58 (Exhibits P S) without acceptable explanation. Further, without explanation, Petonito controlled the transfer of $1,184,910.19 to A-K (Exhibits P, S, T, V, W 
Z). Even Petonito's son authorized payments out of Mobile. Toshiba produced questionable payments or cash gifts, totalling $44,375.00, to an employee of Toshiba who was responsible for arranging credit to Petonito. Petonito paid for personal obligations; i.e., income tax in the amount of $21,352.15 (Exhibit T).
The court concludes from all the intermingling of funds and monetary exchanges between Mobile and Petonito that Mobile was the "alter ego" of Petonito. Toshiba has by a preponderance of the evidence established that the corporation, Mobile, was so controlled and dominated by Petonito without a legitimate purpose that justice requires imposing liability on the real actor, Petonito. Petonito received payments from third party leasing companies in excess of $900,000 for medical systems manufactured by Mobile containing the expensive cameras it purchased from Toshiba. Payments were made by Mobile to A-K Machine, claiming that it covered expenses for research and development for Mobile. Petonito testified that he spent time to develop the product produced and sold by Mobile. Mobile and Petonito kept no records of any loans to A-K. Petonito authorized his son and Pat Ivarone to sign checks. Explanation for signing authority was that Petonito was away for long periods.
As concluded above, Petonito was the alter ego of Mobile, and this court concludes that Mobile was a shell to protect Petonito for all the unsupported withdrawals and payments to another corporation of which he was likewise the sole stockholder. The plaintiff has demonstrated there was a unity of ownership between Mobile and Petonito and that the corporation had ceased to have any effect because it had never begun, and a separate identity was in fact fictitious to defeat individual liability.
 "Courts will . . . disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor. 1 Fletcher, Corporations (Perm. Ed. 1963 Rev.) § 43; Ballantine, Corporations (Rev.Ed.) § 136; 18 Am.Jur.2d, Corporations § 14; see Vogel v. New Milford, 161 Conn. 490, 494, 290 A.2d 231 (1971); Tishman EquipmentCT Page 10422 Leasing, Inc. v. Levin, 152 Conn. 23, 28, 202 A.2d 504
(1964); Humphrey v. Argraves, 145 Conn. 350, 354, 143 A.2d 432 (1958); Hoffman Wallpaper Co. v. Hartford, 114 Conn. 531, 535, 159 A. 346 (1932). We have affirmed judgments disregarding the corporate entity and imposing individual stockholder liability when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock. See Zaist v. Olson, 154 Conn. 563, 573, 227 A.2d 552 (1967).
 "In Zaist, we found the controlling stockholder and a related corporation liable under an `alter ego' theory, concluding that the corporate structure of the defendant in that case could properly have been disregarded under either the `instrumentality' rule or the `identity' rule. Zaist v. Olson,
supra, 578." (Emphasis in original.) Saphir v. Neustadt, 177 Conn. 191, 209-10, 413 A.2d 843 (1979).
 "The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. Lowendahl v. Baltimore O.R. Co., 247 App.Div. 144, 157, 287 N.Y.S. 62 [1936]; Fisser v. International Bank, 282 F.2d 231, 238 (2d Cir. [1960]); Powell, [Parent and Subsidiary Corporations] §§ 2, 3; see Steven v. Roscoe Turner Aeronautical Corporation, 324 F.2d 157, 160 (7th Cir. [1963])." (Emphasis added.) Zaist v. Olson, 154 Conn. 563, 575, 227 A.2d 552 (1967); see also Omaha Pollution Control Corporation v. Carver-Greenfield Corporation, 413 F. Sup. 1069, 1091 (D.Neb. 1976).
 The identity rule has been stated as follows: "`If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the CT Page 10423 economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.' Mull v. Colt Co., 31 F.R.D. 154, 163 (S.D.N Y [1962]); Walkovsky v. Carlton, 24 App.Div.2d 582, 583, 262 N.Y.S.2d 334 [1965]." Zaist v. Olson, supra, 576.
Angelo Tomasso, Inc. v. Armour Construction Paving, Inc.,187 Conn. 544, 552, 553, 554.
Accordingly, for the foregoing reasons, the court enters judgment in favor of the plaintiff against all defendants as to the first four counts of the amended complaint in the amount of $425,566.88, plus court costs. Judgment in favor of the defendants as to Counts Five and Six. The court having found in favor of the defendant as to the Fifth and Sixth Counts rejects the claim for attorney's fees and interest.
Frank S. Meadow Judge Trial Referee